On the Merits, argued September 17, decided September 30, 1913.

# BEALL v. BEALL.*

(128 Pac. 835: 135 Pac. 185.)

**Appeal and Error—Service of Notice—Necessity.**

1. Service of notice of appeal upon defendants, who had no interest in the subject matter of the litigation, and who did not authorize any appearance, is unnecessary, as they are not necessary parties to the appeal, and the appeal will not be dismissed for irregularities in such service.

**Mortgages—Requisites—Evidence as to Character of Instrument— Weight and Sufficiency.**

2. Evidence *held* to show that a deed absolute on its face from the vendor to a creditor of the purchaser was intended as and was a mortgage to secure payment of the purchaser's debt, subject to redemption by the purchaser from the creditor or his heirs and representatives.

**Vendor and Purchaser—Bona Fide Purchasers—Deed as Mortgage.**

3. One purchasing property from the heirs of a person deceased, with knowledge that another claimed that a deed of the property to the deceased was intended as a mortgage, is put upon inquiry and charged with notice of whatever right the claimant may have to redeem.

**Mortgages—Requisites—Evidence as to Character of Instrument— Weight and Sufficiency.**

4. Evidence *held* to show that a deed executed to certain heirs of a deceased creditor of the grantor for property which had previously been deeded to such creditor as security for a debt of the grantor was intended to convey whatever interest the grantor had in the property rather than as security for the original debt.

**Mortgages—Requisites—Evidence as to Character of Instrument— Burden of Proof.**

5. The presumption is that a deed is what it purports on its face to be, and the burden of showing that it was really intended as a mortgage rests upon him who asserts that to be a fact, which must be shown by clear and satisfactory evidence.

*As to the right to foreclose a deed intended as security for debt, as an equitable mortgage, see note in 22 L. R. A. (N. S.) 572.

On the question whether a deed absolute on its face, but intended as a mortgage, conveys the legal title, see note in 11 L. R. A. (N. S.) 209.

REPORTER.

From Clackamas: JAMES U. CAMPBELL, Judge.

This is a suit by R. Edgar Beall against John W. Beall, Portland Railway Light and Power Company, a corporation, E. C. Ramsby, county recorder, Ella M. Hildebrand, Mary Frances Wolfe, Laura H. Hamner, Birdie J. Dudrow, Arthur L. Beall, Marvin E. Beall and Jasper M. Beall. From a decree in favor of plaintiff, the defendant, John W. Beall, appeals. The respondent files motion to dismiss the appeal.

MOTION DENIED.

*Wilson & Neal,* for the Motion.

*Mr. N. A. Peery* and *King & Saxton, contra.*

Opinion by MR. CHIEF JUSTICE EAKIN.

This is a motion to dismiss the appeal, for the reason that service of the notice upon six of the defendants who answered in the case was accepted by J. E. Hedges, who appeared as their attorney in the answer. At the trial it was contended by the respondents that Hedges had no authority to appear for them, and therefore had no authority to accept service of the notice of appeal, and that, there being no service of the notice upon these defendants, the court has no jurisdiction of the appeal, and that it should be dismissed.

In October and November, 1910, defendants Arthur L. Beall, Mary Frances Wolfe, Laura H. Hamner, Birdie J. Dudrow, and Ella M. Hildebrand authorized Peery & Peery and J. E. Hedges to appear in the suit for them. It is a significant fact that in the authority so given it is stated: "It being understood that I claim no interest in the property involved in this suit, * * that defendant John W. Beall is the owner thereof, and that he will bear all expenses." On November 8 and 12, 1910, Arthur L. Beall and Birdie J. Dudrow gave to someone (it does not appear to whom) a qualifying

statement as to the person who should appear for them, but made no mention therein of the fact that they had no interest in the property. No authority to appear for him is shown from Marvin E. Beall. Later, in May, 1911, these six defendants, recognizing the pendency of the suit, and that they were parties thereto, executed a formal appointment to Albert W. Sanson, of Philadelphia, as their attorney in law and in fact, to appear for and represent them in this suit; and on April 4, 1911, Sanson wrote a letter, addressed to Peery & Peery and J. E. Hedges, canceling and withdrawing any authority theretofore given them to appear for these defendants. Whether sent to Peery & Peery and Hedges, or not, does not appear, but it was filed in court November 3, 1911, at the commencement of the trial. This was the condition at the time of the trial. There is no pretense in any of these papers that these six defendants had any interest in the subject of the suit, at the time the answer was filed or afterward, or that they desired to appear in the case; and such a statement is made in their answer.

Therefore the six defendants last above named are not necessary parties to the appeal, and it was not required that the notice of appeal should be served upon them; and the motion to dismiss the appeal is denied.                                MOTION DENIED.

----

Argued September 17, decided September 30, 1913.

ON THE MERITS.

(135 Pac. 185.)

Department 2.    Statement by MR. JUSTICE EAKIN.

This is a suit to have a deed executed about the 28th day of January, 1897, by W. J. Mead to James F.

Beall for the property in question and intended as
security for the payment of $5,000 owing by plaintiff
to James F. Beall, declared to be a mortgage, and to
redeem it therefrom.   Plaintiff alleges that defendant
John W. Beall has obtained a conveyance to himself
of said property with full knowledge of the fact that
plaintiff has some interest therein.   A brief summary
of the facts is necessary to understand the issues,
namely: Prior to January 28, 1897, the plaintiff had
negotiated for the property in question in this suit, and,
being indebted at that time to his father, James F.
Beall, in the sum of $5,000, on that date he had the
property conveyed directly from the grantor Mead to
his father.   In remitting the deed he wrote his father
on September 25, 1897: ''I have made the deed as addi-
tional security to the mortgage you now hold for the
loan to me upon which I have given you my note for
$611.55.''   James F. Beall died intestate November
22, 1900, and defendants herein, Ella M. Hildebrand,
Mary Frances Wolfe, Laura H. Hamner, Birdie J.
Dudrow, Jasper M. Beall, Arthur L. Beall, Marvin E.
Beall, John W. Beall, and plaintiff are the children and
only heirs of said James F. Beall, deceased.   After the
death of James F. Beall plaintiff was appointed admin-
istrator of his estate by the orphans' court of Frederick
County, Maryland.   Plaintiff at all times represented
to the other heirs that this deed to his father was in-
tended as a mortgage; and in the year 1904, being
unable to close the estate until he could pay the balance
he owed it, which amounted to something over $3,000,
on the 19th of August of said year, in order to hasten
the settlement of the estate, he made a deed to all the
other heirs, conveying his one-ninth interest in the
property in question to them, in consideration of their
agreement to release him from the debt to the estate.
After stating his indebtedness to the estate and the

agreement for the release, the deed recites: "Now, therefore, in consideration of the premises and of the sum of one dollar, I, the said R. Edgar Beall, do grant unto the said [naming the other heirs] as tenants in common, all my undivided one-ninth interest in and to all the following described real estate [describing three tracts, one being the property in question here]." It seems that John W. Beall refused to accept this deed or to sign the release.

Thereafter, on the 28th day of November, 1904, after having recalled the former deed, plaintiff executed a second deed to the heirs, excepting John W. Beall, in which he recited: "Whereas * * R. Edgar Beall is indebted to the estate of the said James F. Beall in the sum of thirty-two hundred and seventy-four dollars, * * and whereas, * * the said Ella M. Hildebrand, Mary F. Wolfe, Laura H. (Hamner) Robinson, Birdie J. Dudrow, Jasper M. Beall, Arthur L. Beall, and Marvin E. Beall, seven of the said heirs at law of said James F. Beall, deceased, have agreed to release the said R. Edgar Beall individually and as administrator * * from their respective claims and demands against him by reason of his indebtedness to said estate, upon his conveying to them all of his right, title and interest in and to said real estate hereinafter described." He conveyed to them "as tenants in common all of my right, title, and interest in and to the following described * * land," describing the land in question. This deed was delivered and accepted, the release signed by all the heirs, except John W. Beall, and the deed was recorded December 27, 1909. By a bargain and sale deed dated April 14, 1909, the said seven heirs, with the spouses of those married, conveyed the said property to John W. Beall.

In July, 1909, John W. Beall visited Tacoma, Washington, and while in the west ascertained that the tract

of land in question was valuable, worth probably $18,000; and on the advice of counsel, because of recitals in the deed to him of date April 14, 1909, and because of incompleteness in some of the certificates of acknowledgment, he obtained an additional quitclaim deed from the seven heirs, except Jasper M. Beall, which, although not questioned here, is of doubtful effect. Prior to April 3, 1908, plaintiff offered to buy the property back from the heirs to whom he had deeded it (see Exhibit 42), and on November 3, 1909, he claimed that the deed to the heirs was intended as a mortgage and that he had a right to redeem and made that offer (Exhibit 48). John W. Beall refused to recognize such right, claiming that he was the owner of the whole title in fee, and R. Edgar Beall brings this suit to compel redemption. Jasper M. Beall filed a written consent that decree might be entered for the plaintiff as prayed. John W. Beall answered contesting the claim of plaintiff that the deed to James F. Beall, deceased, was intended as a mortgage or that the interest of the heirs was subject to an equity of redemption in favor of R. Edgar Beall, and pleads the deed of November 28, 1904, from R. Edgar Beall to the heirs, except John W. Beall, and a conveyance from the said heirs to him, and that he is the owner thereof in fee simple. The other heirs filed an answer, which is practically a disclaimer.

The Circuit Court found that the said deed of November 28, 1904, from R. Edgar Beall to the heirs, except John W. Beall, did not convey the fee but was intended as a mortgage, and that John W. Beall took the title with knowledge of that fact and subject to the equity of R. Edgar Beall to redeem and rendered a decree to that effect, from which John W. Beall appeals.          REVERSED: SUIT DISMISSED.

For appellant there was a brief over the names of *Mr. N. A. Peery* and *King & Saxton,* with oral arguments by *Mr. Peery* and *Mr. Will R. King.*

For respondent there was a brief, with oral arguments by *Wilson & Neal.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1, 2. We have no hesitation in holding that the deed from Mead to James F. Beall, deceased, procured by the plaintiff, was intended as a mortgage to secure to his father the repayment of plaintiff's debt to his said father, as shown by the letter of September 25, 1897, accompanying the deed, and quoted in the statement. The evidence tends to show that James F. Beall, deceased, so considered it, and there is no evidence to the contrary, and, in the hands of the personal representatives and heirs of the deceased was subject to the same equity. See *Hall* v. *O'Connell,* 52 Or. 164 (95 Pac. 717, 96 Pac. 1070), a case squarely in point. Defendant John W. Beall admits, by paragraph 3 of his answer, that he took the title to the property with knowledge that R. Edgar Beall had at various times claimed that the deed from him to his father was intended as a mortgage, which put him upon inquiry and charged him with notice.

3. The next question for consideration is: Was the deed of November 28, 1904, by R. Edgar Beall to the heirs, with the exception of John W. Beall, intended as a mortgage to secure to them the payment of the debt due from R. Edgar Beall to the estate, which R. Edgar Beall places at $3,274.05, with interest from May 25, 1903? R. Edgar Beall was the administrator of his father's estate and had delayed settling the estate until there was some complaint as to the delay; and in the year 1904, being unable to pay his own debt to the

estate, which was necessary before settlement, he asked the heirs for a release therefrom in consideration of his conveyance of his interest in the property to them, which was practically accomplished as shown in the statement above. There is no condition or reservation in that deed, but it states the consideration is the release of R. Edgar Beall individually and as administrator of the estate of James F. Beall, deceased, from the respective claims or demands of the heirs against him by reason of his indebtedness to the estate. The first letter in the record by the plaintiff to the heirs proposing the release, accomplished by means of the deed is dated August 19, 1904, in which he says: "I am without the means to settle the balance due the estate except to relinquish all claim to this property and give up my interest in it entirely, placing the full title to all of it in the remaining heirs absolutely. This I have now done upon the advice of my attorney in order to secure the release necessary to close the estate. * * " (Exhibit 8.)

There is no suggestion in any of the correspondence contained in the record that the deed is to be for the purpose of security, nor is there any evidence that any of the grantees so understood it, except possibly Jasper M. Beall, and in letters subsequent to the execution of the deed R. Edgar Beall recognizes it as eliminating his interest in the property. Two months after the execution of the deed, namely, January 21, 1905, referring to his financial embarrassment, he writes: "As I am personally indebted to the estate, which, however, has been entirely settled up with the exception of Rev. John W. Beall's one-ninth interest in the item of $3,274." (Exhibit 13.)

On April 3, 1907, he wrote to Birdie J. Dudrow: "You understand, of course, that the heirs took this property for the balance I owed the estate and that my

offer to buy it back * * was made simply that the heirs might get in cash from the estate. * * You understand, also, I am sure, that I owe the heirs nothing; that they took this property in full settlement of the balance I owed the estate and gave me a release in full. * * You now own your share in this property instead of having the $305, or my note for that amount." (Exhibit 7.)

On April 29, 1907, plaintiff wrote to Morris Wolfe: "The property in question belongs to the heirs except myself. I have no interest in it whatever."

And on May 10, 1907, in a letter to Laura H. Hamner, he says, referring to the property and its management: "As I own no interest in the property and have no voice in its management I send you also herewith all of the vouchers and correspondence I have bearing upon the property, thereby ending my connection with it." (Exhibit 36.)

Also on October 13, 1908, he wrote: "This real estate became absolutely the property of the eight heirs when I deeded my one-ninth interest to the seven, John refusing to accept his part of my share. * * I, of course, own no interest in any of the property and consequently it is not necessary for me to be consulted about a sale." (Exhibit 44.)

On May 8, 1907, he wrote to Morris Wolfe in reference to the property: "I haven't any share at all in it and don't have a claim upon it of any sort." (Exhibit 12.)

There is much more in the plaintiff's letters to the same effect, showing convincingly that from the date of the deed until November 3, 1909 (Exhibit 48), he had no interest in the property and did not owe the debt. During 1907 and 1908 he made some effort to buy the property back but at no time claimed a right to redeem until the letter of November 3, 1909 (Exhibit 48). He says in a letter to Nell Hildebrand: "I

am now able to settle in full the claim of $3,274.05, owing by me to father's estate. Although you gave me a release * * when I transferred a one-ninth interest in my western property * * this was done, as you remember, solely to aid me in closing up my administration, the consideration and understanding being that I would ultimately pay the debt and redeem the property"—and then offers to redeem. But during the five years from the date of the deed this is the first acknowledgment from him that he was liable for the debt except to John W. Beall for one ninth of it.

4. At no time could the heirs or an administrator *de bonis non* have maintained an action therefor. It is held in many decisions in this court that the presumption is that the deed is what it purports on its face to be, and the burden of showing that it was really intended as a mortgage rests upon the one who asserts that to be a fact, which must be shown by clear and satisfactory evidence: *Albany & Santiam W. D. Co. v. Crawford,* 11 Or. 243 (4 Pac. 113); *Sweek* v. *Galbreath,* 11 Or. 516 (6 Pac. 220); *Elliott* v. *Bozorth,* 52 Or. 396 (97 Pac. 632).

In the case of *Albany & Santiam W. D. Co.* v. *Crawford,* 11 Or. 243 (4 Pac. 113), Mr. Chief Justice WATSON says of the deed in question there: "The presumption is that the transaction was, in fact, an absolute conveyance, just as it appears from the face of the deed to have been, and it is one of no little weight either": See, also, *Harmon* v. *Grants Pass Banking & Trust Co.,* 60 Or. 69 (118 Pac. 188).

Mr. Justice MOORE in the latter case says: "The intention of the parties at the time an agreement is consummated to execute a deed determines whether or not title to property was to be irrevocably transferred, or the conveyance, though absolute, was to operate as security for the payment of a debt."

It is said in *Elliott* v. *Bozorth*, 52 Or. 396 (97 Pac. 632) : "The intent must be sought in the circumstances surrounding the transaction, the pecuniary relations of the parties, their previous negotiations, and their acts and declarations contemporaneous with the making of the deed. Their subsequent acts and admissions respecting the subject matter of the contract, while material and relevant, are to be considered rather as evidence or corroborative of a previously existing intent shown to exist."

All the most material evidence in this case is in writing in the deeds and correspondence. The principal parties resided far apart, and the transaction was accomplished by mail.

In the light of the law above stated we find that the deed of November 28, 1904, is an absolute deed and recites that the seven heirs have agreed to release the said R. Edgar Beall from their respective claims, upon the execution of his conveyance, showing a satisfaction of the debt. Subsequent letters prior to 1909 show that he considered the debt satisfied. There is no evidence that at the time of the transaction there was any condition, agreement or understanding that the deed was to operate as security only. To give that effect to the deed, the burden is on the plaintiff to show by clear and satisfactory evidence such intention at that time. We are satisfied from the evidence that there was no agreement nor understanding that the deed was intended as a mortgage or security for a debt. It nowhere appears that the property was considered worth the amount of plaintiff's debt to the estate until in July, 1909. The heirs were willing to accept $50 each for their interest, and plaintiff advised them to accept it. The time to redeem from the tax sales had about expired, and the estate's interest in the property was of doubtful value. The idea of claiming that the deed was

intended as a mortgage and still subject to redemption by the plaintiff evidently did not occur to him until after July, 1909, when its market value appeared to be good. The effect of these deeds is that he transferred all his right, title and interest to the seven heirs, including his right to redeem John W. Beall's one-ninth interest and his own one ninth, as well as the seven-ninths interest of the other heirs. The seven heirs owned the whole title to the land, except John W. Beall's one ninth, and the deed by the seven heirs to John W. Beall vested in him the whole title to the tract in fee simple as against plaintiff, and plaintiff has no equity of redemption therein, and is not entitled to the relief prayed for.

The decree of the Circuit Court is reversed and the suit is dismissed.          REVERSED: SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.