Argued September 15, affirmed September 28, 1915.

## BOLIN *v.* WALTERS.

(151 Pac. 716.)

**Account—Evidence—Sufficiency.**

1. In a suit for an accounting between plaintiff and defendant
for commissions received from the sale of real estate, evidence *held*
to show that the transaction between the parties was ended and that
defendant had accounted.

[As to what are mutual accounts, see note in Ann. Cas. 1913D,
816.]

From Multnomah: Thomas J. Cleeton, Judge.

This is a suit by F. C. Bolin against R. F. Walters.
From a decree in favor of defendant, plaintiff appeals.
The facts are set forth in the opinion of the court.

AFFIRMED.

For appellant there was a brief and an oral argu-
ment by *Mr. W. L. Cooper.*

For respondent there was a brief over the names of
*Messrs. Bauer & Greene* and *Mr. A. H. McCurtain,*
with an oral argument by *Mr. Thomas G. Greene.*

Department 2.   Mr. Justice Bean delivered the
opinion of the court.

1. This controversy arose out of substantially the
following facts: Defendant Walters was a real estate

broker, doing the principal part of his business in the name of the O. W. P. Land Company. Plaintiff, Bolin, was a timberman, and had sold a large tract of timber, adjoining that in regard to which the dispute arose, to parties represented by one N. R. Smith, who signified to him that they desired to purchase a quarter section of timber at $1.50 per 1,000 feet, and requested him to find the owner. Bolin informed Walters of the prospective purchaser, on condition that he would divide the commission or profits with him. On February 23, 1910, a 30-day option to purchase the land was obtained by the defendant in the name of his wife, H. G. Walters, in consideration of $200 paid by the latter. The purchase price named was $17,100, to be paid within 40 days from the time of election to purchase. Beall, the owner of the timber land, resided in Virginia, and Mr. E. H. Peery, an attorney, of Portland, acted as his agent. Afterward plaintiff and defendant entered into a contract, which Bolin asserts to be as follows:

"In consideration of $100 to me paid by F. C. Bolin, I agree to give to the said F. C. Bolin one half of the net returns received by me from the sale of the south ½ of north ½ of section 22, township 4 south, range 5 east. It being expressly understood that all expenses in connection with the said sale, including all commissions due to other parties, must first be paid out of the moneys received by me. The final remainder to be divided equally between us.

"[Signed] R. F. WALTERS."

Bolin claims he did not see the option, nor know it was in the name of Mrs. Walters. He paid Walters $100 on account of the deal. Defendant claims that the contract with Bolin was made by the O. W. P. Land Company, and provided that, if a sale of the land was

made to N. R. Smith, the commission should be divided with plaintiff. Under date of February 28, 1910, he made an entry in the daybook of the company as follows:

"Received from F. C. Bolin $100 to apply on office expense of sale of Beall timber to N. R. Smith, he to get one half of office commission."

On February 26th an agreement of purchase and sale of the land was executed between Mrs. H. G. Walters and N. R. Smith. The price was $22,000, of which $2,000 was deposited in the bank for the purpose of payment. The balance was to be paid as soon as title was found satisfactory to the purchaser; it being understood that there was a tax title to adjust, and a suit pending to determine the title, to be settled within a reasonable time. On account of litigation Beall could not give title as provided in the option until the fall of 1913: See *Beall* v. *Beall,* 67 Or. 33 (128 Pac. 835, 135 Pac. 185). The time of the option was extended twice, and up to April 9, 1910. When it developed that there would be a long delay in securing title on account of the legal proceedings, Walters says he talked with Bolin in regard to the probability of having to purchase the land and pay or become responsible for the payment of $17,100 before the land could be sold. In view of the dispute as to what the contract with Bolin actually was, it is well to note how the parties regarded the matter at that time. Walters testified:

That when they talked it over, he told Bolin that they did not feel like taking the responsibility of agreeing to buy that piece of property. "I asked him [Bolin] if he could join with us in any way, and what he thought he could do." That Bolin said: "I couldn't do anything just now. * * Now, you do just what you

think is best in the matter. If you think well to take it up, I am pretty sure you can sell that piece of property; that Smith will complete the deal,'' but not to do anything on his say-so.

Mrs. Walters consulted with an attorney, and during the life of the option served notice that she elected to purchase under the terms thereof. Thus she became obligated to purchase the land, whether the sale to Smith was consummated or not. Bolin states that Walters asked him to what extent he could help financially in taking up the option, and he answered:

''I told him I guessed we could take care of it. He said he didn't want to go into that. He was not a timberman, and didn't know anything about it, and said: 'I suppose, if Mr. Smith wouldn't have taken this up, I would never have went into it.' I says: 'Mr. Walters, we can't hold Mr. Smith here for two or three years. If he don't want to take this up, when he is ready, he has a right to draw his money, and if we don't take care of it we will have to lose our $100 apiece.' ''

He further testified:

''If I was not able to myself, I had a man to take the timber.''

Mrs. Walters states that she placed the sale of the land under the control of the O. W. P. Land Company, of which her husband was president; that the commission was to be $1,000.

The lawsuit of the Bealls having been terminated, a sale of the land was made to parties represented by Mr. Smith about October, 1913, for $22,000. Walters managed the sale through the O. W. P. Land Company, with the assistance of others: Bolin not desiring to be known in the transaction. Upon Bolin's return from the East, he and Walters took up the matter of

dividing the commission. Bolin states that Walters said:

"I have been through quite a little bit of expense, and I think I ought to have a little more out of it than you had."

Walters claims that a commission of $1,000 was paid to another party to assist in making the sale. After figuring out some other expenses, Walters paid Bolin by check $403.50 out of the $1,000 received as the commission of the O. W. P. Land Company, taking the following receipt:

"Nov. 8, 1913.

"Received from O. W. P. Land Company the sum of $403.50 as my share in the commission from the sale of J. W. Beall timber tract in section 22, township 4 South range 5 East, Clackamas County, Oregon.

"F. C. Bolin."

At the time of this transaction Bolin states that he told Walters that:

"You would never have got on to this deal if I hadn't put you on to it, and you got $5,000 there."

It therefore appears that at the time of the settlement Bolin knew that a profit had been realized by someone when he accepted Walters' check. At that time Mr. Walters asked Bolin for the contract in regard to the commission, and two or three days afterward Bolin surrendered the same to Walters, who destroyed it; hence the controversy as to its contents. The negotiations for the sale of the land were pending for so long a time, and there were so many complications attached, that a misunderstanding very naturally arose between the participants. Defendant claims that there was a mutual settlement of the whole transaction. Whatever the exact wording of the contract may

have been, it seems that plaintiff expected to realize a portion of the commission. His version of the matter of purchasing the land under the option indicates that all he desired to do was to furnish a purchaser; that he did not wish to purchase the land on speculation. The trial court found in effect that the transaction between plaintiff and defendant was fully settled. The plaintiff does not in his complaint charge any fraud in the premises. We think that he has wholly failed to show that he is entitled to a further accounting by the defendant.

The decree of the lower court was right, and is affirmed.                                              Affirmed.

Mr. Chief Justice Moore, Mr. Justice Eakin and Mr. Justice Harris concur.