CHARLES SWEGLE, Appellant, *v.* R. F. and EMMA WELLS, Respondents.

Equity—Question of Fact may be Submitted to Jury.—In equity, the general rule under the code is that both issues of law and fact shall be tried by the court, but whenever it becomes necessary or proper to inquire of any fact by the verdict of a jury, a statement of the question may be made and submitted to them, and their verdict may be read in evidence at the trial.

Idem.—The general equity practice must be looked to to determine when it is necessary and proper to inquire of a fact by a jury. Under such practice, if the facts are strongly controverted and the evidence nearly equally balanced, or if the difficulty upon the facts are too great to be removed by the report of the master or commissioner, in the opinion of the chancellor, an issue of fact may be directed to be tried at law to relieve the chancellor's conscience, and that he may be satisfied by the verdict of a jury of the truth of the matters in controversy.

Idem—Effect of Verdict on Appeal.—When a verdict has been taken in such case in the court below, it comes up with the transcript on appeal and may be read in evidence, and, while not conclusive upon the court, it should not be disregarded unless clearly against the evidence.

Negotiable Paper—Payment, Authority to Receive.—While a person not in the actual possession of negotiable paper is presumed from that fact alone to have no authority to receive payment thereon, yet such presumption may be rebutted and overcome by evidence showing actual authority.

Appeal from Polk County. The facts are stated in the opinion of the court.

*Thayer & Williams, W. H. Holmes and Warren Truitt,* for appellant.

*Knight & Lord, B. Hayden and J. A. Stratton,* for respondents:

This was a suit to foreclose a mortgage to secure the payment of a promissory note for one thousand five hundred dollars, made by the respondent, R. F. Wells, to N. Henton, dated February 4, 1876, due one year after date. The complaint alleges that the note was assigned to plaintiff in February, 1876, and that no part thereof has been paid except one hundred and eighty dollars, interest to February 3, 1877; two hundred and eighty-five dollars paid February 3, 1877, and one hundred and fifty dollars paid November 2, 1877, and claims a balance of one thousand one hundred and seventy-four dollars and thirty-five cents, and interest from November 2, 1877.

The answer admits the making of the note and mortgage in question; denies all the other allegations of the complaint, and alleges in effect as a further and separate answer: 1. That one C. W. Shaw and N. Henton were partners in the broker business in Salem, and were at the dates mentioned in the complaint the agents of appellant for the purpose of negotiating and collecting loans; that the money for which the note and mortgage were given was the property of appellant, and in making said loan and taking said note and mortgage said Shaw & Henton acted as his agents. 2. That on the seventeenth day of October, 1876, respondents paid on said note to said Shaw & Henton, agents as aforesaid, the sum of one thousand dollars, gold coin, and on the thirteenth day of November, 1876, paid to said Shaw & Henton on said note the further sum of five hundred dollars, gold coin; that on the second day of November, 1877, respondents paid to appellant on said note the further sum of one hundred and fifty dollars gold coin, said sum being seven dollars and seventy-three cents more than was then due.

For a second further and separate answer respondents allege: 1. That for their pretended services in securing said loan said Shaw & Henton charged them seventy-five dollars, which they paid; that this sum was thus charged upon an unlawful agreement between such agents and the appellant, by which the latter was to receive one half of the sum so charged in addition to the twelve per centum interest al-

lowed by law for the money loaned. The appellant moved to strike out the last separate answer. The motion having been denied, he replied, putting in issue all the new matter in the answer.

A jury was called and the facts in issue submitted to them, as follows:

1. Is the plaintiff (appellant) the owner and holder of the note and mortgage sued on?

2. Were Shaw & Henton the agents of plaintiff when they loaned to defendants (respondents) the money named in the note and mortgage sued?

3. Did the defendants pay to said Shaw & Henton any money to be applied on said note and mortgage, and if yes, when was the same paid, and how much money was paid at each time?

4. If any money was paid to Shaw & Henton on said note and mortgage, were said Shaw & Henton then the agents of said Swegle, and authorized by him to receive said money for him?

5. Did the plaintiff receive as a consideration for loaning said money secured by said note and mortgage any part of the commission charged defendants by said Shaw & Henton for negotiating said loan for them, and if yes, then how much?

The jury found for the appellant upon the first question, and upon all the other questions their verdict was in accordance with the allegations of the separate answer. This verdict was offered in evidence and the court found the facts in conformity therewith, and rendered a decree accordingly.

By the Court, PRIM, J.:

This case comes here on appeal to be tried *de novo* on the pleadings, evidence and verdict of the jury rendered upon the issues of fact submitted to them in the court below. It is provided by section 392, page 192, of the code, that "In suits of equity both issues of law and fact shall be tried by the court unless referred." The same section further provides that: "Whenever it becomes necessary or proper to inquire of any fact by the verdict of a jury, the court may

direct a statement thereof, and that a jury may be formed
to inquire of the same.   The statement shall be tried as an
issue of fact in an action, and the verdict may be read as
evidence on the trial of the suit." As the code does not
provide when or in what cases it becomes necessary or
proper to inquire of a fact by the verdict of a jury, it be-
comes necessary to look into the general equity practice in
order to determine that question.   Mr. Greenleaf, in speak-
ing upon this subject, says: "The chanceller may if he
pleases assume to himself the determination of every mat-
ter of fact suggested by the record, but if the facts are
strongly controverted and the evidence is nearly equally
balanced; or if one of the parties has a peculiar right to a
public trial upon the fullest investigation, as if the will of
his ancestor or his own legitimacy and title as heir at law is
questioned, or the chancellor feels a difficulty upon the facts
too great to be removed by the report of the master or com-
missioner; in these and other cases of like character it is
the practice in general for the chancellor to direct an issue
to be tried at law, to relieve his own conscience and to be
satisfied by the verdict of a jury of the truth or falsehood
of the facts in controversy." (3 Greenl. on Ev., sec. 261;
2 Daniell's Chancery Practice 1071; 15 Cal. 378.)

Thus it will be observed that under the old chancery
practice the verdict of a jury having been taken by the
chancellor as merely advisory to his conscience upon cer-
tain controverted facts, was not regarded as conclusive or
binding upon him, but might be disregarded and treated as
a mere nullity if in his opinion it was not supported by the
evidence.   And in this case it appears from the record that
the issues of fact made by the pleadings were submitted to
a jury in the court below, and without any objection what-
ever being interposed there by either party.   And it is
claimed here for the first time, on behalf of appellant, that
this was not a proper case to be submitted to a jury, but that
the issues of fact as well as law should have been tried by
the court below without any intervention of a jury.

Upon looking into the transcript and the evidence taken
at the trial and reported by a short-hand reporter, and sub-

mitted upon the hearing of the case here, we think that position is not well taken. Upon the principal issues of fact the evidence was very contradictory and conflicting, and so nearly equally balanced that it was doubtful which scale preponderated; consequently if we are to be guided by the rules of the old equity practice we must necessarily come to the conclusion that it was a proper case to be submitted to a jury. But we are not led to inquire how the verdict of a jury taken under such circumstances in the court below shall be regarded in this court on appeal. Our answer to this proposition is, that it occupies the same position here that it did in the court below; it may be read in evidence, and while not conclusive upon the court it should not be set aside unless clearly against the evidence. But in a case like this, where the main witnesses are either the parties to the suit or persons deeply interested in the transaction out of which the suit arose, and the evidence contradictory and nearly evenly balanced, we think the verdict is not only entitled to weight but to special consideration. The jury having heard the oral examination of the witnesses in the court below, their opportunity and competency for passing upon the credibility of the witnesses and judging of the weight of the testimony were far better than this court could be by merely reading the evidence committed to paper. But having carefully reviewed all the evidence we find that the verdict of the jury is supported by a preponderance of it. It shows that Messrs. Shaw & Henton were engaged in carrying on the business of real estate agents and money brokers in the city of Salem; and that respondent applied to them at their office for a loan of one thousand five hundred dollars, offering to secure the same by a mortgage upon certain lands in Polk county; that said Shaw & Henton having no money of their own to invest in loans, reported the application to appellant, who after making the necessary inquiry and satisfying himself as to the sufficiency of the security offered, agreed to furnish the money and take the loan. Being unwilling, however, to have his name known in the transaction on account of not wishing to be annoyed with renewal of notes, extension of time and the

collection of notes, it was arranged that the note should be executed in the name of Henton and made payable to him or bearer.   Appellant having consented to this arrangement, the one thousand five hundred dollars were paid into the office and the arrangement carried into effect.   The theory of appellant is, that this loan was negotiated by Shaw & Renton upon their own account and not as his agents, and that he was a mere purchaser of this note and mortgage in good faith as a matter of speculation and investment.   But this theory we think is inconsistent with many circumstances developed by the evidence in this case.   In the first place it appears that Shaw & Henton had no money of their own to invest in such loans.   And it is not very likely that the appellant would have paid the full one thousand five hundred dollars for this note if he had been buying it on speculation.

But it further appears from the evidence in this case, that prior to the maturity of this note, and while in the actual possession of appellant, that respondent paid the full amount due thereon, including principal and interest, to Messrs. Shaw & Henton, at their office, with the understanding that it was to be credited upon this note.   And the question is raised upon this state of facts as to whether they were the agents of said Swegle and authorized by him to receive said money for him.   And while the general rule is that authority to receive payment upon a note like the one in question may be presumed from its possession, yet this presumption may be rebutted and overcome by the evidence.   Shaw & Henton not having the actual possession of this note at the time these payments were made, raises a presumption against their authority to receive the money due thereon; but as a matter of fact they may have been the fully authorized agents of appellant for that purpose.   The jury by their verdict having so found, and this being the main point upon which the evidence was strongly controverted, we do not feel warranted in disturbing their verdict.

Entertaining the views herein expressed, we hold that the decree of the court below should be affirmed, with costs.