## MAYS *v.* ROBERT MAYS ESTATE CO.*

### (174 Pac. 716; 183 Pac. 751.)

**Appeal and Error—Sufficiency of Undertaking—Signature of Principal.**

1. An appeal undertaking, reciting that plaintiff has appealed, and covenanting with defendant that in consideration thereof plaintiff will pay all damages, etc., awarded against him is sufficient, though not signed by plaintiff.

**Appeal and Error—Undertaking—Recitals—Sufficiency.**

2. An appeal undertaking, reciting that plaintiff has appealed and covenanting with defendant that in consideration thereof plaintiff will pay all damages, etc., awarded against him, is sufficient, though person signing does not describe herself as surety.

### ON THE MERITS.

**Mortgages—Presumption That Deed is Absolute may be Overcome in Equity.**

3. The presumption is that a deed absolute upon its face is what it purports to be, and is intended as an absolute conveyance; but this presumption may be overcome in a proper case in a court of equity by evidence that the transaction was really a loan and that the deed was intended as a mortgage only.

> [As to the effect of lapse of time to have deed declared mortgage, see note in Ann Cas. 1918C, 755.]

**Mortgages—When Evidence Insufficient to Show Absolute Deed a Mortgage.**

4. Evidence *held* insufficient to sustain claim that an absolute deed was intended as a mortgage to secure a loan from grantee to his brother, and that grantee agreed to convey property to brother on brother's repayment of loan.

---

*The question as to whether a deed absolute on its face but intended as a mortgage conveys legal title is discussed in a note in 11 L. R. A. (N. S.) 209.                    REPORTER.

From Lane: GEORGE F. SKIPWORTH, Judge.

On motion to dismiss appeal.          DENIED.

*Mr. Charles A. Hardy,* for the motion.

*Mr. H. E. Slattery, contra.*

McBRIDE, C. J.—1, 2. The respondent moves to dismiss this appeal for the alleged reason that the undertaking is insufficient. The undertaking is in the usual form, except that the surety therein does not describe herself as "surety," and the document is not signed by the principal.

We do not think the objection is well taken. In *O'Connor* v. *Towey,* 70 Or. 399 (140 Pac. 625), this court, speaking through Mr. Justice McNARY, held that it was not necessary for the principal to sign the undertaking. The undertaking recites the fact that the plaintiff has appealed from the decree, and covenants with the defendant that in consideration of such appeal the defendant will pay all damages, costs and disbursements which may be awarded against him on appeal. We are of the opinion this sufficiently indicates that the person signing the undertaking does so as surety for the plaintiff, and that the document is not subject to the objection urged.

The motion to dismiss is denied.

MOTION DENIED.

Affirmed September 16, 1919.

On the Merits.

(183 Pac. 751.)

Department 2.

This is a suit brought by the plaintiff against the defendant, Robert Mays Estate Company, a corporation, to compel the defendant to deed over to the plaintiff a certain 80-acre tract of land situated in Lane County, Oregon. It seems that plaintiff was a younger brother of Robert Mays, deceased. In 1891 the plaintiff had contracted with one R. P. Allison for the purchase of the 80 acres of land in question, agreeing to pay therefor the sum of $800. He went into possession of the land and paid the interest up to 1898, but seems to have been unable to make any payments on the principal. About that time Allison demanded the payment of the principal sum and plaintiff, being unable to pay it, appealed to his brother Robert, who then lived in Wasco County, Oregon. Here, there is a controversy between plaintiff and defendant; plaintiff contending that Mays agreed to loan him $700, with which to complete the purchase of the land, and take the deed from Allison in Robert May's name to secure the payment of the money, which plaintiff claims he was to have without interest, and that he was to have a deed for the land from Robert Mays whenever he paid said sum of $700.

On the contrary, the defendant claims that Robert Mays refused to make a loan to the plaintiff, but that he agreed to buy the land if it could be bought for $700, and let plaintiff have the use of it for a home. At any rate, it is conceded that Robert Mays paid, or

advanced the $700 and that the deed from Allison, with the consent of plaintiff, was made out to Robert Mays in absolute form; and that the deed was duly recorded in the deed records of Lane County. In 1902, about four years after the deed was executed, Robert Mays died, leaving a widow and heirs. Some years after his death the heirs formed a corporation, which is the defendant herein, and the land in question was conveyed by the heirs to said corporation, which has ever since been the holder of the legal title. After the purchase of the land in 1898 the plaintiff remained in possession of the property, using it as a home, until the death of Robert Mays, and thereafter continued to make it his home, with the consent of the heirs of Robert Mays, up to the year 1909, when plaintiff moved away from the land, and never lived upon it again; however, he continued to retain possession of the premises and rented the property to different parties, and finally, about 1913, leased it to one Hunnicutt for a period of eight years. The defendant refused to recognize the validity of these leases and about 1917, commenced a proceeding against Hunnicutt to recover possession of the property.

During the time plaintiff was in possession of the property, he made some moderate improvements on the place and paid the taxes up to the year 1913, and he had the use of the premises free of charge while he made it his home, and collected the rents and profits from the place after he moved away. The plaintiff brings this proceeding to have the deed made to Robert Mays declared a mortgage, and to compel the transfer of the land from the defendant to him.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. H. E. Slattery.*

For respondent there was a brief and an oral argument by *Mr. C. A. Hardy.*

BENNETT, J.—The only question in this case is purely one of fact, as to whether the transaction by which Robert Mays obtained an absolute deed to the land was an actual purchase by him, or whether it was in the nature of a loan, and the deed in the nature of a mortgage or security for the same. It is very plain that Robert Mays purchased the land with the primary purpose of providing a home for his brother; but Robert Mays is dead, and as there were no other witnesses to the transaction between Joel D. Mays and Robert Mays, and as the written communications between the two, at the time of the transaction, have been lost or destroyed in the intervening years, a conclusion must be reached almost wholly from the circumstances of the transaction, the presumption from the deed itself, the testimony of the plaintiff and his statements and admissions at different times.

3. The natural presumption in the first instance is that a deed absolute upon its face is what it purports to be, and is intended as an absolute conveyance, but this presumption may be overcome in a proper case in a court of equity, by evidence that the transaction was really a loan and that the deed was intended as a mortgage only. While the testimony of plaintiff in this case was that the transaction was a mortgage, we think his repeated admissions are inconsistent with that view, and destroy the effect of his testimony in that regard.

The defendant has introduced a series of letters from the plaintiff, written at different times, from which it appears he always recognized that the title in Robert Mays was an absolute title, and that the land

belonged to him and his heirs; and he seems to have made no claim otherwise until shortly before the commencement of this suit. The plaintiff acknowledges the writing and sending of the letters referred to. As early as 1892 he wrote to F. P. Mays, who seems to have been managing the Robert Mays estate, as follows:

"I want to know whether he ever had any understanding with any of you boys as to what disposition he wanted made of this place that *he bought.* I should have spoke to him and made some kind of a deal for the place when he was down if he had not started back so unexpectedly. Now Pierce I want you to let me know just what I can have the place for."

Again on May 11, 1909, he writes:

"I believe I have asked you twice by letter how much you would take for the place so I will ask you again to put a figure on the place, just what you will take right down."

On April 23, 1915, he writes:

"I never expected him to give us the place, but I did believe he would do just what he had told your Aunt Miley Haill and your Uncle Oliver Mays and Robertson Allison, the man he bought the place of, and they all told me that your father in talking with them, said he had made such provisions regarding the land that my family could have a home as long as we lived."

And again:

"Now Pierce, if you want to sell the place and want to do the right thing by us, as I requested you to do years ago, put a reasonable price on the place and give us the first dig at it."

Again in August of the same year (1915):

"So far as giving you possession, I will turn it over and you can place it on the market with the understanding that Hunnicutt has the use of the place until

the expiration of the fourth year, as he states in his letter.''

On the 3d of October following, after the matter of the validity of the lease to Hunnicutt had come up and was discussed, he writes:

''I told him [Hunnicutt] I only claimed a life lease on the place. * * As to buying the place, I am not able. As to the reasonable cash value or cash sale, I will say $40 per acre. I believe I can sell it for that. I am satisfied I could in a short time by putting an adv. in our county paper. I will try it if you say so for just what I get over $40 per acre when you get ready to sell.''

Finally on October 28, 1915, he writes:

''I aimed to tell you in my last correspondence that the taxes on *your eighty* in Lane County has not been paid this year, and I can't for my life raise the money to pay them. If they ain't paid at once the place will be advertised and sold. I will send you the statement I received from the sheriff not long ago so you can send the amount necessary to settle them and get your receipt.''

4. These statements and admissions are absolutely and fatally inconsistent with the present claim of the plaintiff, that he owns the property and that the transaction was only a loan and mortgage. In view of these statements and admissions and of the absolute character of the deed upon its face, it seems plain that the plaintiff has not sustained the allegations of his complaint.

The court below evidently came to this conclusion, after hearing the plaintiff's testimony and all the oral testimony in the cause. We find nothing in the record upon which this finding and conclusion can be disturbed.                                     AFFIRMED.

McBride, C. J., and Bean and Johns, JJ., concur.