Argued July 3, affirmed July 29, 1919.

## SMITH v. HEADLEE.*

(183 Pac. 20.)

**Mortgages—Absolute Deed—Intent.**

1.  A deed absolute in form, or any other conveyance, must be construed to be a mortgage subject to redemption, where it is made manifest from a consideration of all surrounding facts and circumstances that the parties thereto intended the conveyance to operate only by way of security.

[As to absolute deed as mortgage, see note in 129 Am. St. Rep. 1137.]

**Mortgages—Absolute Deed—Burden of Proof.**

2.  The burden of proof rests upon one claiming that a deed absolute in form is a mortgage to show the real character of the transaction; the presumption existing that a deed absolute on its face is what it purports to be.

**Mortgages—Absolute Deed—Character of Instrument—Security.**

3.  A deed absolute on its face is a mortgage if a pre-existing debt in relation to which it was given was not extinguished, or if a new debt was intended to be created and the conveyance was given as security therefor.

**Mortgages—Absolute Deed—Evidence.**

4.  In action to have a deed absolute in form declared a mortgage, evidence *held* to show that the deed was executed only as security for a pre-existing debt and for advances to be made.

From Columbia: James A. Eakin, Judge.

Department 2.

Plaintiff instituted this suit to have a deed, executed by plaintiff to defendant J. R. Headlee, which is absolute on its face, declared to be a mortgage. A decree was rendered in favor of plaintiff from which defendant appeals.

The facts in relation to the transaction are substantially as follows: On the twenty-sixth day of December, 1912, the plaintiff John J. Smith gave to defendant J. R. Headlee a note for the sum of $100, loaned to plaintiff by Headlee, and executed a mortgage on

---

*On parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage, see comprehensive note in L. R. A. 1916B, 18.                    Reporter.

93 Or. —17

sixty acres of land described in the complaint to secure the same. Smith was then in poor health, needing money to pay his expenses in the hospital, where he went and remained for a time, after which he returned to his home on the land. The mortgage was never recorded. About February 25, 1913, the plaintiff was compelled to return to the hospital and desired an additional loan from J. R. Headlee with which to meet his expenses. On that date he executed to Mr. Headlee a warranty deed to the premises to secure the payment of $100 and interest mentioned in the mortgage, and also as security for any sums of money the defendant J. R. Headlee might expend for the benefit of plaintiff in paying his hospital fees, for medical services, and taxes on the land. Mr. Headlee at that time agreed to pay his expenses for a period not exceeding one year. The note and mortgage were not surrendered or canceled, but were retained by J. R. Headlee. The plaintiff testifies that at the time of the execution of the deed, it was understood and agreed that upon the repayment by the plaintiff of the sum of $100 mentioned in the mortgage, and the payment of the sums of money, defendant J. R. Headlee might pay for the benefit of the plaintiff to Mrs. Landfare for hospital expenses and to Dr. Sproat, together with payment for medicine for the plaintiff, and any taxes on the real property paid by Headlee; that the defendant J. R. Headlee and his wife Cora Headlee would reconvey the real estate described in the complaint. At the time of the execution of the deed, Mr. Smith sent for Mr. Headlee and they went to the office of the notary public; that he told Mr. Headlee that he needed more money, and they talked about making him out better security. Smith said: "Well, if you have to have it, why I have to give it." The notary public made out the deed, and Mr. Headlee was to pay

the expenses to Mrs. Landfare and the doctor. Smith states:

"A. Well, I demanded a bond for a deed security to show that I could redeem the place after I would get the money. He says, 'Any time that you get the money and principal, why you can have your place, I don't want it.' * *

"Q. Any time you get the money and interest, the principal and interest, he would deed the place back to you, did he say that?

"A. Yes, that is what he did."

It appears that the plaintiff is illiterate and signed the deed by making his mark; that Headlee was to keep up the taxes and insurance on the place; that Mr. Headlee did not want to give a bond for a deed as he did not want any expense, in case Smith failed to make payment; that Mr. Headlee said to Smith:

"Any time you bring me the money, principal and interest, I will turn these papers over to you." "Deed me the land back. Deed it back again just the way it was."

Mr. N. F. Norem, the notary public, who drew the deed stated in substance that after the deed was signed, they wanted some understanding besides the deed with regard to the land, or with regard to the payment of the doctor, and also Mrs. Landfare, just exactly the kind of contract he did not remember, but it was something in regard to the land, and he did not feel as though he wanted to make up the contract, and he referred them to an attorney. He further stated:

"Well, it seems that Mr. Headlee, in case that Mr. Smith was to die or would not be able to redeem his land, why, he didn't want any trouble with any of Mr. Smith's relations, that he wanted absolutely complete, he wanted to have the complete ownership of the property, of the land, without having to foreclose a mortgage or something of that kind, or any trouble."

Mr. J. J. Johnson, the attorney with whom the parties consulted, testified to the effect that they brought the deed to him; that at the time nothing was reduced to writing between Headlee and Smith. As he remembered, Mr. Headlee stated that Mr. Smith already owed him some money in the neighborhood of $100; they anticipated that Mr. Smith had to have treatment by the doctor and go to the hospital. Smith had no means to pay this expense, and he was to transfer this property to Headlee. Headlee was to take care of this expense for one year, after which time it was optional with Headlee as to what he might pay. Then Smith wanted some kind of a contract that he could buy this property back if he got well and wanted the property, and "Mr. Headlee wanted to know what effect that would have upon the title that he would get." He states:

"I explained to both of them that if they took the deed simply as security for whatever money Mr. Headlee might advance, that it would be a mortgage and that he might as well increase the mortgage he already had, there was no need of taking a deed which would be no more or less than a mortgage and if he gave a contract to purchase the land at a reasonable figure, the probability would be that either Mr. Smith in the future or some of his heirs, in case it became their part, might try to construe that contract into making the deed a mortgage, so in any event, he would have taken a risk if he took that contract."

Mr. Headlee said: "If there was to be any question of a mortgage in this deal that he wasn't going to have anything more to do with the transaction"; that he explained to them that it must be an absolute conveyance; that he explained to Mr. Smith that if he delivered the deed to Mr. Headlee under the agreement that he was to convey him this property, and Headlee

obligates himself to pay whatever expenses there may be for a year, *"and relieve you of this indebtedness that you* already owe him," that the land would be Headlee's.

Dr. James Sproat testified in corroboration of plaintiff as to what occurred at the notary public's office; that he was at the attorney's office only a portion of the time while the parties were there.     AFFIRMED.

For appellants there was a brief over the names of *Messrs. Harris & Gore* and *Mr. William M. Cake,* with oral arguments by *Mr. W. A. Harris* and *Mr. Cake.*

For respondent there was a brief over the names of *Messrs. Needham & Needham* and *Mr. A. W. Mueller,* with oral arguments by *Mr. Daniel Needham* and *Mr. Mueller.*

BEAN, J.—A careful reading of the testimony, fragments of which we have referred to, shows that the deed executed by the plaintiff to defendant J. R. Headlee was for the purpose of securing the payment of $100 loaned by Headlee to Smith with interest thereon, and any further sums of money paid by defendant J. R. Headlee as expenses for plaintiff, together with any taxes and insurance premiums on the real property paid by Headlee, and that it was understood and agreed between the parties that when the plaintiff paid defendant Headlee such sums with interest, he should "have his land back," that is, Headlee and his wife would reconvey the land to plaintiff, and that the deed although absolute on its face was in effect a mortgage.

It appears from the record that at the time of the execution of the deed, the plaintiff desired and was

practically compelled to have some financial assistance in order for him to receive medical attention and proper care, and that he applied to the defendant Headlee who was his friend and neighbor for help. He was perfectly willing to secure the payment of all that he then owed Headlee as well as all future advances, Headlee agreed to make and should make. It seems that it was agreeable to both that when Smith should repay Headlee in full that Smith should have his land back. In case he did not recover his health so as to be about again, and failed to make such payment, Headlee did not want to have the deed in such a condition that he would have to foreclose, or so that any of Smith's heirs could make trouble for him. At no time did Headlee seem unwilling to agree to reconvey the land if Smith paid him in full. On this point, he does not dispute the plaintiff as to the substance of what was said in regard thereto. Indeed when the matter was broached by plaintiff's attorneys, defendant Headlee offered to reconvey the land to plaintiff upon the payment of $850, which was more than the plaintiff was willing to pay, and more than the trial court found to be due from plaintiff to defendant Headlee. It is fair to conclude that defendant made this offer for the purpose of showing that he was ready to carry out the agreement made at the time of the execution of the deed.

The trial court carefully ascertained the amount due from plaintiff to Headlee, and fixed the same as $575.04. No error is assigned in this respect.

The story is an old one. Headlee, while he was satisfied to have Smith rest assured that the land would be deeded back to him if he made payment, was not willing to make such agreement in writing, and in case Smith failed to pay, then, he desired to have the

deed an absolute one.  He was advised by an attorney
as to what the law was in regard to a deed given as
security, but he did not seem willing to follow such
advice.  He undertook like many others to have the
deed absolute, when in reality it was given as security,
and for no other purpose, and was in effect a mort-
gage.

It is a maxim of equity that: "Once a mortgage
always a mortgage." By this is meant that the char-
acter of a transaction involving the conveyance of
property is fixed at its inception, and if at that time
the conveyance is intended to operate by way of secur-
ity and as a mortgage, a mortgage it must remain with
all the incidents thereof despite express stipulations
to the contrary in the instrument of conveyance look-
ing to the abrogation of the mortgagor's equity of
redemption.  A court of equity never deviates from
this doctrine.  Its maintenance is deemed essential to
the protection of the debtor, who, under pressing
necessities, will submit to ruinous conditions, waiving
the equity of redemption allowed him on breach of his
obligation, in the expectation and hope of repaying
the loan at the stipulated time and thus preventing
forfeiture.  It is axiomatic that a conveyance cannot
be a mortgage unless given to secure the performance
of an obligation.  Conversely, if the conveyance is in-
tended to secure an obligation, it will be construed in
equity as a mortgage and as nothing else.  The form
or letter of an instrument of conveyance is not conclu-
sive of its character, but its purpose is the decisive
factor; and if that be security, then the instrument,
irrespective of its form, must be construed to be a
mortgage.  The question is one of intention to be de-
cided from a consideration of the whole transaction
and not from any particular feature of it.  Therefore,

the characterization of the transaction by the parties may be fairly disregarded: 19 R. C. L., p. 244, par. 7.

1. From the controlling principle that a conveyance is a mortgage irrespective of its form, if designed to secure the performance of an obligation, it results that a deed, though absolute in form and unqualified by any accompanying agreement for a reconveyance of the property or a defeasance, must be construed to be a mortgage subject to redemption where it is made manifest from a consideration of all surrounding facts and circumstances that the parties thereto intended the conveyance to operate by way of security and in no other mode. This rule is frequently enunciated and applied: 19 R. C. L., p. 261, par. 29.

2. There can be no question but that the burden of proof rests upon one whose claim is founded upon the theory that the real character of the transaction is different from that which is imported by the language of the deed of conveyance. The presumption exists that a deed absolute on its face is what it purports to be: *Harmon* v. *Grants Pass Banking & Trust Co.,* 60 Or. 69 (118 Pac. 188); *Beall* v. *Beall,* 67 Or. 33 (128 Pac. 835, 135 Pac. 185); *Parrish* v. *Parrish,* 33 Or. 486 (54 Pac. 352). Plaintiff has borne that burden by proving the allegations of his complaint.

3. In order to determine whether a deed absolute on its face is in effect a mortgage, the test is, was a debt created, or was a pre-existing debt continued, and was the instrument designed as security. If the pre-existing debt was not extinguished, or if a new debt was intended to be created and the conveyance was given as security therefor, then it should be declared to be a mortgage: *Bickel* v. *Wessinger,* 58 Or. 98 (113 Pac. 34); *Caro* v. *Wollenberg,* 68 Or. 420, 427 (136 Pac. 866); *Grover* v. *Hawthorne Estate,* 62 Or. 77 (114

Pac. 472, 121 Pac. 808); *Reilly* v. *Cullen,* 159 Mo. 322 (60 S. W. 126).

4. In the case at bar, there was a pre-existing debt owing from plaintiff to defendant J. R. Headlee of $100, which was not extinguished at the time of the execution of the deed. Headlee retained the note given as evidence thereof, and also kept the mortgage. There was also a new obligation, indefinite in amount, from Headlee to Smith, created in making the arrangements for the payment of medical services and hospital expenses, etc. The whole transaction plainly shows that the deed was given as security to Mr. Headlee for the several amounts. The testimony fully sustains the findings of the trial court. We fully concur in such findings.

Finding no error in the record, the decree of the lower court is affirmed.      AFFIRMED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.