Argued March 17, affirmed April 27, 1960

## PAUL *v.* MAZZOCCO ET AL
### 351 P. 2d 709

*Leo Levenson,* Portland, argued the cause for appellant. With him on the briefs was Norman B. Kobin, Portland.

*Will H. Masters,* Portland, argued the cause for respondent. On the brief were Masters & Masters.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY and DUNCAN, Justices.

PERRY, J.

The plaintiff, holder of a deed absolute on its face to the following described real property in Multnomah County, Oregon,

> Lots 1 and 2, Block 15, Overlook, in the city of Portland,

upon which a motel property was built, brought this suit for the purpose of having the court declare he held this property in trust for the benefit of himself and the defendants David E. Mazzocco and Carmen P. Mazzocco. Plaintiff alleges, pursuant to an oral agreement entered into, the parties were joint venturers in the purchase and development of the above described real property, which, after development, was to be sold and the profits realized therefrom divided

between the parties, one-third to plaintiff and two-thirds to defendants Mazzocco.

The defendants Mazzocco denied the agreement was that of a joint venture and alleged the deed absolute on its face was given as security for money borrowed by them from the plaintiff.

A jury, called by the trial court in an advisory capacity, found for the defendants. The trial court concurred in the finding of the jury,—that the deed executed by the defendants was in fact security for the debt due the plaintiff,—and its decree was entered accordingly. From this decree the plaintiff appeals.

■ Although a jury determined the issues of fact in the trial court, its findings were advisory only and could have been rejected instead of accepted by the trial court. The matter is, therefore, before this court triable de novo. *Mogul Transportation Co. v. Larison,* 181 Or 252, 181 P2d 139.

The plaintiff contends that a strong presumption exists that a deed absolute on its face is what it purports to be; *Kohler v. Gilbert et ux.,* 216 Or 483, 339 P2d 1102; *Sweek v. Bennett,* 133 Or 388, 290 P 747; *Smith v. Headlee,* 93 Or 257, 183 P 20; that to overcome such presumption the evidence must be clear, cogent and convincing; *Umpqua Forrest Ind. v. Neenah-Ore. Land Co.,* 188 Or 605, 217 P2d 219; *Mays v. Robert Mays Estate Co.,* 93 Or 502, 174 P 716, 183 P 751; that defendants have failed to meet this requirement and the cause should be reversed.

■ Unquestionably, it is a well-established rule of law that a high degree of proof is necessary to establish that an instrument purporting on its face to be a deed is in fact a mortgage, for the reason, if it were not so the door would be opened to invite fraud and injustice. "* * * [N]o man would be safe in taking

a deed of property. When it had doubled or trebled in value it would be only necessary for the grantor to bring witnesses to testify to any agreement that the deed was intended as a mortgage, to enable him, on payment of the purchase price and interest, to redeem." 36 Am Jur 756, Mortgages § 134.

■ However, we are of the opinion the circumstances of this case do not lend themselves to the application of this rigorous rule. The plaintiff in the inception of his cause alleges the deed is not what it purports to be on its face, for he states he holds the property as a trustee for the benefit of himself and the defendants, pursuant to a prior oral agreement of the parties.

In other words, the plaintiff has himself stated that the effect of the conveyance rests upon a prior agreement of the parties. The issue thus raised is— What was that prior agreement? Did the parties enter into a joint venture or a debtor-creditor relationship? Therefore, we are only concerned with whether or not the evidence preponderates in favor of the plaintiff or the defendants.

■ In our evaluation of the cold record we are constrained to give to the finding of the jury, adopted by the trial court, great weight. The jury and trial court heard the oral examination of the witnesses and their opportunity for passing upon the creditability of their testimony and judging its weight is greater than ours. *Mogul Transportation Co. v. Larison,* supra; *Wadsworth v. Brigham et al.,* 125 Or 428, 259 P 299, 266 P 875; *Swegle v. Wells,* 7 Or 222.

■ A searching examination of the record reveals much of the testimony diametrically opposed, but from the maze of contradictory facts the following appears undisputed. On September 16, 1955, the defendant David E. Mazzocco obtained a six month op-

tion to purchase the land to be developed. He paid $1,000 down, leaving a $7,500 balance due at the end of the option period. On March 13, 1956, with the option about to expire and defendant unable to raise the needed purchase money, he contacted plaintiff, who agreed to advance the amount needed to conclude the purchase. Both parties agreed to place the title in Standard Investment Co., an Oregon corporation and holding company with which plaintiff was closely affiliated. Previously, defendant Mazzocco had made arrangements for two loans to finance construction costs. The first, an "interim building loan" for $10,000 to be made by Realty Loan Corporation. The second, a "firm commitment" of $60,000 from Benjamin Franklin Savings & Loan Association, upon the condition that the motel be completely built, furnished and operative. When the "interim loan" failed to materialize, plaintiff advanced $1,202, and defendant was able to secure $22,500 from one Harry Herzog. Standard Investment Co. on June 8, 1956, conveyed to defendants David Mazzocco and Carmen Mazzocco. In return for the above sum, Herzog was given a note and first mortgage on the property, which was recorded June 8, 1956. On June 14, 1956, a deed from defendants Mazzocco to plaintiff was recorded.

The motel was completed in August, and in September Benjamin Franklin Savings & Loan Association forwarded $60,000 to the Abstract & Title Co. to be held in escrow and disbursed in payment of all claims against the motel when and at such time as the Benjamin Franklin Savings & Loan Association could be assured of obtaining a first mortgage against the property. To bring this about plaintiff again conveyed to defendants Mazzocco, the Benjamin Franklin mortgage was placed upon the property, and defendants

reconveyed to plaintiff, who held title until the filing of this suit. To recapitulate these various transactions and their chronology the following table is provided:

| | | | |
|---|---|---|---|
| 1. | (deed) | Moores—Standard Investment Co. | Mar. 19, 1956* |
| 2. | (deed) | Standard Invest. Co.—Mazzoccos | June 8, 1956 |
| 3. | (mortgage) | Mazzoccos—Herzog | June 8, 1956 |
| 4. | (deed) | Mazzoccos—Paul | June 14, 1956 |
| 5. | (deed) | Paul—Mazzoccos | Nov. 8, 1956 |
| 6. | (mortgage) | Mazzoccos—Benjamin Franklin Savings & Loan Assoc. | Nov. 8, 1956 |
| 7. | (deed) | Mazzoccos—Paul | Nov. 8, 1956 |

The evidence is conflicting when we enter the phase of the case dealing with the agreement of the parties. Plaintiff testified in regard to the agreement: "When the structure was sold, Dave was to get his money back, his thousand dollars, and I was to get mine, and the profit, if any, would be divided between Carl Fossi, David Mazzocco and Hugo Paul." On cross-examination he was asked to elaborate further:

"Q Let me get your position, if I may, right. Were you to put or buy the balance of the purchase price of this real property?

"A Originally?

"Q Yeah.

"A Under the option.

"Q That's right.

"A Yes, $7700.

"Q And then for that you were to get one-third interest in the property?

"A That's right.

* Recording dates.

"Q And a third interest in the property when it was sold?

"A That's right.

"Q You would get a third interest in the furniture and furnishings?

"* * * * *

"A That's right."

Under the terms of the alleged agreement, plaintiff was not to receive any money until the motel was sold and in his brief he maintains there was no personal debt due from defendants by acceptance of the option or execution of deeds. Yet he admits being paid $4467.75 from the proceeds of the Benjamin Franklin loan, and when asked what he did with this money he replied: "* * * I applied it to the money I had invested." He was paid interest on the money he advanced.

Defendant David E. Mazzocco testified plaintiff agreed to loan him $7,500 to buy the lot and in return was to receive $10,000 plus six percent interest. A note, mortgage and deed were given as security and turned over to a Mr. Kaplan, the escrow agent at Abstract & Title Co. This defendant further testified: "It was my opinion at the time that I could construct the building and repay back Mr. Paul for the lot with the $60,000. * * *" This defendant also testified:

"Q When was the first time, Mr. Mazzocco, if any, that you learned that Mr. Paul was claiming a third interest in this property?

"A When Z. F. Earl told me. He didn't tell me that he wanted a third, he said that he had an interest in the building.

"Q  Did you have a conversation with Mr. Paul about that?

"* * * * *

"A  Yes, I did, I contacted Kobin [plaintiff's attorney] and Kobin found Mr. Paul and arranged a meeting at Kobin's office.

"Q  When was that about?

"A  That was about the 7th of November.

"Q  What was the conservation there?

"A  The conversation was that Mr. Paul had an interest in the building and that they were going to close the escrow out in their favor and that any arrangement that I had such as the mortgage didn't count. I asked Mr. Kobin for the mortgage and he refused to give it to me.

"Q  Did you ever have any agreement with Mr. Paul that he was to have a one-third interest in this property?

"A  No."

Finally, defendant testified that upon request of Mr. Earl, of Abstract & Title, he submitted a list of creditors [defendants' exhibit 11] to be paid from the Benjamin Franklin loan. Included was $10,000 earmarked for plaintiff. Mr. Earl refused to close the escrow, stating he had received instructions from Mr. Kobin not to close until defendants signed a deed conveying the property back to plaintiff. Defendant David E. Mazzocco said he signed a set of escrow instructions drawn by Mr. Kobin's office authorizing Abstract & Title Co. to record the Benjamin Franklin mortgage, record the deed from him and his wife to plaintiff and disburse moneys to creditors, including plaintiff. Defendant steadfastly insisted he had to sign

the deed or lose the loan. Mr. Earl's testimony on this point is:

"A We paid Mr. Herzog off upon instructions from Mr. Mazzocco.

"Q Have you any instructions there with reference to any $10,000 mortgage from Hugo Paul to Mazzocco?

"A Not instructions, no.

"Q What have you got in reference to it?

"A The only reference that I have is a memorandum sheet that was left on my desk strictly in a work sheet not under any written instructions or anything.

"Q Is that Exhibit 11, a photostat of it?

"A That is correct, I made a photostat of it for Mr. Mazzocco at his request.

"* * * * *

"Q Prior to that time, Mr. Earl, to your knowledge had Mazzocco or anyone on his behalf brought in this yellow sheet that you say was in the file, the copy of which is in evidence? Do you know when that was brought in?

"A No, Sir, I don't. It has been in the file though.

"* * * * *

"Q Did Mr. Mazzocco at any time ever tell you that all Mr. Earl [sic Paul] had was a mortgage on this property?

"* * * * *

"A Not directly to me.

"Q Did he ever make it indirectly to you?

"A Well, he left that memorandum which he picked up yesterday and referred to [ex 11]. That I didn't pay any attention to. There were many memorandums in the file."

Earl's testimony lends credence to defendant Mazzocco's statements that he was going to pay plaintiff off with the loan proceeds. Submission of Exhibit 11 indicates those creditors named were to be recipients of the loan, and according to Mazzocco this sheet represented his escrow instructions. Plaintiff was listed as a creditor, confirming defendant's testimony that he was unaware of plaintiff's claimed one-third interest until the Title company refused to close the escrow.

The testimony of Harry Herzog further tends to establish a security transaction. He testified he had written defendant David Mazzocco that $22,500 would be loaned if a deed and note in his favor were furnished as security. He further testified Mazzocco suggested plaintiff be apprised of these terms and a meeting was arranged at which plaintiff, defendants David Mazzocco and Fossi, Herzog and a Mr. Hall were present. When informed of the terms, plaintiff proposed another plan. Herzog testified:

"A Mr. Hugo Paul then said that he had an alternative to propose and whether I would accept it or not. I asked him what it was and he said the property in question had been sold by him to Mr. and Mrs. Mazzocco. He had a first mortgage on the property. He would be willing to subrogate his first mortgage on the property to my first mortgage if that was acceptable to me and I said it was."

Defendant David Mazzocco's testimony confirmed Herzog's account:

"Q What was the discussion?
"A Mr. Herzog at that time did not know that I still owed for the lot and Mr. Paul informed him that I still owed him for the lot. Mr. Paul told him that he would subrogate his mortgage to his first mortgage."

Defendant Fossi's testimony was substantially the same:

"Q  Now, what did Mr. Paul tell Mr. Herzog?

"A  He said that he would subrogate his mortgage to the Herzog mortgage."

Throughout the record we are conscious of the fact that defendant Mazzocco was in dire financial straits. He secured the purchase price only three days before the option to buy expired. Once the motel was completed he faced financial ruin unless he could secure the $60,000 loan from Benjamin Franklin Savings & Loan Association, which had been promised even before the land was purchased. Title had to be in defendant Mazzocco's name as a prerequisite to obtaining the loan. Plaintiff refused to relinquish title unless defendants gave a deed back. Again, we think it highly improbable, under the circumstances, that defendants voluntarily conveyed a one-third interest in the motel, and equity requires that the decree of the trial court be affirmed.

Affirmed.