Argued June 5, affirmed August 14, 1962

## CROSSWHITE v. FRIEDMAN

373 P. 2d 1009

*Robert Neil Gygi,* Portland, argued the cause for appellant. With him on the brief were Keane & Haessler, Portland.

No appearance for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, GOODWIN and LUSK, Justices.

PER CURIAM.

This is an appeal from a decree in a suit to declare the rights of the parties in the proceeds of the sale of a tractor. The trial court awarded the fund to the defendant.

The suit was complicated because both parties had acted as their own counsel during critical stages of the controversy. At least one document appears to have been altered, stories have been changed, and various kinds of self-help were resorted to. The trial court understandably found itself in a quandry in attempting to determine which party was the more believable, or the less unbelievable.

The difficulty began when the plaintiff, who was purchasing a tractor on a conditional sales contract, fell behind in his payments. Either as a favor to him, or to make a profit for herself, or both, the defendant paid off the balance of $2,045.52 due the seller of the tractor. The parties were cordial friends at this time. The defendant took a memorandum from the plaintiff purporting to transfer to the defendant all the plaintiff's interest in the tractor. The plaintiff continued to use the tractor. There is a dispute whether the transfer of the plaintiff's interest in the tractor was a gift, a sale, or an equitable mortgage. There was some evidence that the plaintiff gave away his interest to keep it from falling into the hands of others. There is other evidence that almost compels the conclusion that the transfer was a security device. If it was, equity could enforce such an agreement as a chattel mortgage. See *Paul v. Mazzocco et al*, 221 Or 411, 351 P2d 709; *Kohler v. Gilbert et ux*, 216 Or 483, 339 P2d 1102.

Instead of redeeming the chattel mortgage, which the plaintiff now claims it was, the plaintiff busied

himself with various schemes to find a buyer for the tractor. Later, after acrimony between the parties had reached massive proportions, the plaintiff concealed the tractor from the defendant, and gave other outward indications of being an absconding debtor. In due course, after the expenditure by the defendant of time, effort and money in attempting to protect her $2,045.52, the tractor was impounded and the parties came before the court. By this time their affairs were so tangled the trial judge came to the conclusion that even if the transfer of the tractor was a security device as contended by the plaintiff, the plaintiff's own conduct was such that it would not be equitable to turn over to him the proceeds of the sale.

■ The net proceeds probably did not greatly exceed the expenses of the defendant and the loss of the use of her money. The parties had agreed that the tractor could be sold and that the proceeds should be held pending the order of the court. The sale was made for $3,800. Costs of sale and necessary repairs brought the net proceeds down to $3,093. The defendant had advanced $2,045.52. More than a year elapsed during the controversy. In turning over to the defendant the $1,047.88 by which the proceeds of the sale exceeded the original sum advanced by the defendant, the trial judge in effect awarded the defendant liquidated damages, interest, attorney fees and costs. If the parties had written a chattel mortgage in the usual form, it would have provided for costs of collection, interest, and attorney fees. Inasmuch as the plaintiff came to court seeking equity, he ought not to complain about being required to do equity.

The plaintiff was unwilling to concede that the defendant was entitled to any interest, attorney's fees,

or other compensation for the trouble to which she had been put in protecting her investment. He demanded the entire proceeds of the sale, together with a substantial sum of "damages" for the loss of use of the tractor while it was out of his possession. It is not possible to discern from the record before us whether some portion of the proceeds might have been refundable to the plaintiff if he had proceeded on a different theory. The evidence that might have helped the plaintiff on that score is missing. In cases of this character, the matter of doing equity between the parties is largely up to the trial judge. He is in the best position to evaluate the witnesses, to draw inferences from the manner in which they testify, and to resolve questions of fact. We cannot say, from the record before us, that the trial court was in error in resolving doubtful questions against the plaintiff.

Affirmed, neither party to recover costs.