Argued and submitted October 21, 1981, affirmed April 5, 1982

# SASSER,
## *Appellant,*
### *v.*
# DeLORME,
## *Respondent.*

(No. 16-79-02647, CA 19927)

642 P2d 1192

Gordon R. Hanna, Eugene, argued the cause for appellant. With him on the briefs was Frye & Smith, P.C., Eugene.

Thomas E. Wurtz, Springfield, argued the cause for respondent. With him on the brief was Wurtz, Logan & Logan, Springfield.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

THORNTON, J., dissenting opinion.

## RICHARDSON, P. J.

This case involves claims by plaintiff, a protected person, through her conservator against defendant, her former son-in-law.[1] Plaintiff sought an accounting and presented claims for money had and received and for conversion. After trial by jury on the two law claims and trial to an advisory jury on the equitable accounting claim, the jury found in favor of defendant generally, and the court entered judgments on the verdict. Plaintiff appeals the denial of her motions for directed verdict and the court's adoption of the advisory jury verdict on the accounting claim.

Plaintiff is a 78-year-old widow. She has survived all her children. Before the events in controversy, plaintiff suffered a series of strokes. In June, 1974, she suffered a stroke which left her blind and paralyzed on her left side, and she was placed in a nursing home.

At the time plaintiff entered the nursing home, her daughter, defendant's wife, was still alive. She assumed control of plaintiff's finances after the stroke. Defendant's wife died on October 20, 1975. Thereafter, defendant took over the handling of plaintiff's affairs. Defendant was designated a cosignatory on plaintiff's bank cards and accounts and he was given a power of attorney on November 10, 1975. Plaintiff told defendant that if he made sure all her expenses and bills were taken care of, he could use the remainder of her money as he saw fit. Defendant used some of plaintiff's money for personal expenses, including tuition for his daughter, a loan to his brother, and the purchase of a lawn mower. He also continued paying plaintiff's expenses, including nursing care, clothing and medical bills.

Plaintiff's grandson became concerned about the handling of her finances. On March 15, 1978, he was appointed her conservator and took over management of her affairs. He felt that some of defendant's expenditures were suspicious. He instituted this suit, on plaintiff's behalf, to require defendant to account for all monies

---

[1] After the notice of appeal was filed, the protected person died. Her estate was substituted as plaintiff.

expended from November 10, 1975, until March 15, 1978. In separate law claims, plaintiff also sought damages for conversion of her funds and for money had and received. Defendant, as an affirmative defense to all three claims, alleged that any funds he spent for his own benefit were given him as a gift.

■        At trial, considerable testimony was given about plaintiff's physical condition throughout the relevant period, her history of gift giving, her relationship with defendant, whom she treated as a son, her understanding of her finances and of the terms and scope of the gift. Near the close of testimony, plaintiff moved for a directed verdict on the ground that "defendant has not carried its burden of proof on the issue of the gift."[2] Plaintiff argued that there was no evidence that she understood the nature of the gifts and that, absent such understanding, no gift was shown. Plaintiff also argued that there was no evidence of delivery. Defendant countered that evidence of understanding was not necessary. The court denied the motion, stating that there was "all sorts of evidence in here that the jury can determine her ability to understand what she was doing or her inability." The court also rejected plaintiff's contention that no delivery was established. The court noted that physical delivery was not necessary to effectuate a gift of this sort. There was evidence that defendant was given a power of attorney and was designated as a cosigner on plaintiff's bank account in order to allow him to withdraw funds as he saw fit. We find no error in the trial court's ruling.

The jury found in favor of defendant on the conversion and money had and received claims. It sat as an advisory jury pursuant to ORCP 51D on the accounting claim and determined all claims against plaintiff and in favor of defendant. The court found the advisory verdict proper and adopted it as its own. Plaintiff argues that our scope of review of the equitable claim is *de novo* and that, on the basis of the evidence presented we should require defendant to return to the estate all the money used for his

---

[2] Plaintiff actually made two motions for directed verdict and assigns the denial of each as error. Plaintiff does not distinguish between the two on appeal and we treat them the same on review.

own benefit. In essence, plaintiff argues that we should find that she did not make a gift of these funds to defendant.

■ ■   Plaintiff is correct in the abstract that in an equitable accounting claim tried to an advisory jury the trial court is free to disregard the finding of the jury and rule on its own. She is also correct in stating that we review equitable claims *de novo* and may arrive at a conclusion different than the trial court. However, because of the particular posture of this case we adopt a different approach. The central issue in all three claims for relief was whether the protected person had made a gift to defendant and the scope of any such gift. The jury, in rendering a verdict for defendant in the two law actions, necessarily found that there was a gift of the funds defendant used for his own purposes. The same jury, in its advisory verdict by answers to interrogatories, stated that there had been a gift. The right of defendant to use the funds was therefore determined in the two law actions. Equity cannot disregard the determination in the law action of the legal rights of the parties to funds involved in the accounting. A separate determination of the legal relationship in equity would be tantamount to a collateral review of the jury's findings in the law action.

■ ■   The purpose of an accounting is to strike a balance between the parties and determine if any funds are owed by either. A settlement of the account may require an order for one party to pay funds to the other. If, as in this case, the entitlement to the funds has been determined by a verdict in the law side of the case, there is nothing left to account for. The decree was appropriate.

Affirmed.

**THORNTON, J.,** dissenting.

I strongly disagree with both the rationale and the result reached by the majority in this case. In my view the majority is not only deciding the case on a ground not raised by either party during the trial, it is resting the decision on a ground that is contrary to settled law in this state. ORS 19.125(3).[1]

---

[1] ORS 19.125(3) provides:

First, there was never at any time even a suggestion by any of the parties that the jury verdict on the two legal claims would be dispositive of the accounting claim. Nevertheless, the majority now disposes of the case on that issue without benefit of briefs or oral argument and without the citation of any authority for its decision.

An appellate court is not at liberty on appeal to disregard the issues the parties have made in the trial court, even to achieve an equitable result. *Cole v. Fogel, et al,* 210 Or 257, 310 P2d 315 (1957). Thus, it was held in *Turner v. McDaniel, et al,* 194 Or 595, 243 P2d 273 (1952), that where the parties treated the proceeding as one for an accounting and the trial court decided the several issues upon that theory, the Supreme Court would so treat the proceedings on appeal. Here, the trial court also expressly decided the accounting issue upon that ground, a fact which the majority opinion seemingly disregards.

Second, the majority completely ignores or disregards the fact that the defendant expressly refused to stipulate to having the jury determine the accounting issue. This indicates clearly that both parties were expecting that the accounting claim would be decided by the court.

The case began as a Petition for Partition and Accounting, clearly equitable. The complaint was amended to add two legal claims, plaintiff still maintaining in her first "Count for Accounting" that she had no adequate remedy at law. It was the intent of the parties that the jury would reach a verdict on the legal counts and be *advisory only* on the accounting count. The trial judge employed the jury in an advisory fashion under ORCP 51(D):

> "D. Advisory jury and jury trial by consent. In all actions not triable by right to a jury, the court, upon motion of a party or on its own initiative, may try an issue with an advisory jury *or it may, with the consent of all parties, order a trial to a jury whose verdict shall have the same effect as if trial to a jury had been a matter of right."* (Emphasis added.)

---

"Upon an appeal from a decree in a suit in equity, the Court of Appeals shall try the cause anew upon the record."

Under the above, unless the parties consent, the equitable claims are still triable to the court. Counsel for defendant specifically stated he would not stipulate to having the accounting issue tried to the jury. Here both parties and the court treated the accounting claim as equitable with the finder of fact being the court.[2] At no time did the parties assume the court would be bound by the jury's verdict in the legal claims. If the parties wanted the jury to be the trier of fact on the accounting claim, they could have so stipulated. ORCP 51(D).

The majority seems to bind the trial court, and in turn this court, on the accounting claim to the jury verdicts in the two legal claims under a theory analagous to res judicata. The application of res judicata leads to the opposite result here. Plaintiff's claim was originally solely on petition for partition and accounting for a jointly owned duplex. The legal claims were added in an amendment. The doctrine of res judicata, by prohibiting the splitting of claims, required plaintiff to join the two legal claims with her accounting - otherwise they would be barred.[3] If plaintiff had brought only the accounting claim and it had been tried to the court, review would be *de novo* as a suit in equity. Plaintiff should not be foreclosed from *de novo* review because she joined legal claims which she was required to join or lose them. If plaintiff had earlier brought claims against defendant for conversion and money had and received, it is true that she would be foreclosed from another forum, *i.e.*, a suit in equity, for an accounting. However, here plaintiff brought all her claims in one proceeding and should not be foreclosed from consideration of her accounting claim. In effect, the majority has eliminated the accounting claim because it involves a question of fact common to the two legal claims.[4]

---

[2] How the parties and the court treat a claim as equitable or legal has been considered in determining whether *de novo* review applies. *See, e.g., Oregon Farm Bureau v. Thompson,* 235 Or 162, 176, 378 P2d 563, 384 P2d 182 (1963), and cases cited therein.

[3] ORCP 24(A) provides:

"A plaintiff may join in a complaint, either as independent or as alternate claims, as many claims, legal or equitable, as the plaintiff has against an opposing party."

[4] There were no special findings of fact under the money had an received and the conversion claims. The verdict form read:

In *Paul v. Mazzocco et al*, 221 Or 411, 351 P2d 709 (1960), the court discussed the role of an advisory jury and the scope of appellate review. The case involved a suit to declare plaintiff the holder of property in trust. The court stated:

> "A jury, called by the trial court in an advisory capacity, found for the defendants. The trial court concurred in the finding of the jury, - that the deed executed by the defendants was in fact security for the debt due the plaintiff, - and its decree was entered accordingly. From this decree the plaintiff appeals.

> "Although a jury determined the issues of fact in the trial court, its findings were advisory only and could have been rejected instead of accepted by the trial court. The matter is, therefore, before this court triable de novo. *Mogul Transportation Co. v. Larison*, 181 Or 252, 181 P2d 139." 221 Or at 413.

*See also* discussion in *State ex rel Jones v. Workman*, 34 Or App 777, 780, 579 P2d 1302, *rev den* 284 Or 521 (1978).

The result reached by the majority is particularly egregious in this case. A review of the record reveals how defendant took advantage of his position. As an example, plaintiff contends that defendant should account for sums used in duplex mortgage payments jointly owned by plaintiff and defendant. Plaintiff did not occupy her side of the duplex after June, 1974, because she was confined to the nursing home. Defendant made the monthly payments from his account and then wrote checks from plaintiff's account. In doing so, defendant wrote checks off plaintiff's account for more than one-half of the monthly payment. In addition, defendant rented plaintiff's side from July, 1977 to February, 1978. Although the rent receipts for the first

---

### "SECOND CLAIM - MONEY HAD AND RECEIVED

"____1. We find for the plaintiff in the sum of $____ (not to exceed $26,925.75).

__X__ 2. We find for the defendant.

### "THIRD CLAIM - CONVERSION

"____1. We find for the plaintiff in the sum of $____ (not to exceed $26,925.75).

__X__ 2. We find for the defendant."

two months were deposited in plaintiff's account, thereafter defendant deposited the rental income of $250 per month in his own account. Defendant moved out of his side of the duplex in April, 1976, and received rental income from August, 1976 until February, 1978 of $325 per month which he placed in his own account. In sum, during the relevant period, defendant was drawing more than one-half of the monthly mortgage payment from plaintiff's account and keeping the rent receipts as his own income. Prior to trial, defendant tendered $3,889.47 to plaintiff for partial reimbursement for the overpayments and rent receipts. The tender was refused because defendant had deducted a 10. management fee which plaintiff felt defendant was not entitled to.

On *de novo* review, I would find that the mortgage overpayments and rent receipts were not intended as a gift. Defendant should account to plaintiff for the amounts owing.