## DE LASHMUTT & OATMAN, AND THOMAS CON-NELL, APPELLANTS, *v.* W. R. EVERSON ET AL., RESPONDENTS.

EQUITY PRACTICE—VERDICT OF JURY, EFFECT GIVEN TO.—This court adheres to its decision in the case of *Swegle* v. *Wells*, made at the present term, that the verdict of a jury upon questions of fact submitted to them by the court on the trial of an equity suit is not conclusive upon the court, yet it should not be disregarded unless it be clearly against the weight of testimony.

PROMISSORY NOTE — PURCHASER BEFORE MATURITY — NOTICE.—Where the holder of a negotiable promissory note purchases it for a valuable consideration before maturity, the maker will not be permitted to set up fraud or a want of consideration as a defense to the payment of the note unless the holder had notice of these defects before he bought it. If, however, the holder buys such note from the payee before maturity, with full knowledge at the time of purchase that it was obtained from the maker by fraud or without any consideration, he takes subject to all equities and all defenses which would exist between the original parties to the note.

IDEM—ESTOPPEL.—The holder of a negotiable promissory note purchased before maturity, and for value, but with notice that it had been obtained from the maker by fraud and without consideration, can not by way of estoppel prevent the maker from setting up such defenses as against him, by showing that the maker before the purchase told him that he had no objection to his buying the note from the payee, if it appear that at the time such statement was made the maker was ignorant of such fraud and want of consideration.

Idem—Admissions in Pleading.—Where the holder of a negotiable promissory note who bought it before maturity, with notice that it was obtained from the maker by fraud or want of consideration, brings suit against the maker and alleges in the complaint that he bought the note from the payee, and this allegation is admitted in the answer, such holder will not be allowed to prove on the trial that he received it from a prior holder without such notice of fraud or want of consideration.

Appeal from Washington county. The facts are stated in the opinion of the court.

*Caples & Mulkey,* for appellant Connell.

*Claude Thayer,* for appellants De Lashmutt and Oatman.

There is no precedent for the submitting of a case to a jury upon testimony taken before a referee. Such a practice is contrary to the spirit of the law. (*Green* v. *Gouverneur & Kemble,* 5 Johns. Cases, 501, 507, 508.) The defense of warranty and false and fraudulent representations can not be joined in one plea. They are antagonistic; one being in the nature of a contract and the other that of a tort. (*Edick* v. *Crinn,* 10 Barb. N. Y. 446; *Chandelor* v. *Lopus,* 1 Smith Leading Cases, 291; *Rose* v. *Hurley,* 39 Ind. 78.) Admitting that the defenses of warranty and fraud could be set up in the same answer, they should be pleaded as separate defenses. (See Code, p. 120, sec. 72; *Benedict* v. *Seymour,* 6 How. P. R. 298; *Lippincot* v. *Goodwin,* 8 Id. 242; 2 Estee's Pleadings, 263; *Rolfes* v. *Russell,* 5 Or. 400, and cases there cited; *Dunning* v. *Cresson,* 6 Or. 241; *Rose* v. *Hurley,* 39 Ind. 78; *Pike* v. *Fay,* 110 Mass. 134; *Barber* v. *Morgan,* 51 Barber 116; 18 How. P. 321.) The representations must be proven to have been made during the negotiations or at the immediate time of the sale. (Moak's Van Santvoord's Pleadings, 472.)

"Every person reposes at his peril on the opinion of others, when he has equal opportunity to form and exercise his own judgment—*simplex, commendatis non obligat.*" (2 Kent, 484.) Representations as to profits are mere matters of opinion, and are not such as constitute fraudulent representations. They are not such as a purchaser has a right or is supposed to rely on. (*Sandford* v. *Handy,* 23 Wend.

268; *Fowley* v. *Cowgill*, 5 Blackf. 18.) They must establish a total failure of consideration. If only a partial failure is established it is not sufficient. (*Water* v. *Armstrong*, 5 Minn. 450; *Dunning* v. *Cresson*, 6 Or. 241; *Wheelock* v. *Barney*, 27 Ind. 463; *Oakley* v. *Boorman*, 21 Wend. 594; *Wentworth* v. *Dows*, 117 Mass. 14.) The mere fact that the recipe would not produce stone would not avoid the note, if the patent right for the states purchased possessed a market value. (*Gifford* v. *Carville*, 29 Cal. 589.) The patent right for Virginia and West Virginia possessed a market value up to November or December, 1876, sufficient to constitute a consideration for the note. In case of failure after the transfer of the note, such defense can not be set up. *Splivallo* v. *Patten*, 38 Cal. 138; *Nevith et al.* v *Meyer*, 33 Ind. 511.) Respondents should have, within a reasonable time, tendered a reassignment. (*Rose* v. *Hurley*, 39 Id. 83; *La Fayette Agri. Works* v. *Philips*, 47 Id; *Perley* v. *Balch*, 23 Pick. 283; *Lawton* v. *Kelly*, 61 Barb. 566; *Gifford* v. *Carvill*, 29 Cal. 589.)

If the defense relied upon is that of warranty, the respondents, by the production of the written and sealed assignment containing a warranty of title, have restricted themselves from the proof of any other or further warranties. They can not introduce any parol evidence to vary or extend the terms of that instrument. (Code, 248, sec. 682; 1 Parsons on Con. 576; *Pouree* v. *Adams*, 12 East, 1; *Rose* v. *Hurley*, 39 Ind. 81; *Johnson* v. *McCabe et al.* 37 Id. 540; *Goss* v. *Eagle Sugar Refinery*, 103 Mass. 333.) The maxim of the law is *expressum facit cessare tacitum*. (*McClure* v. *Jeffrey*, 8 Ind. 83; *Van Ostrand* v. *Reed*, 1 Wend. 424.)

A warranty is a contract, and it must appear that Everson was a party and assented thereto. The representations appearing in the recipe can not be construed into warranties unless it appears in some manner that they were regarded as such by the parties. They must have become a part of the *res gestæ*. (1 Parsons on Con. 580 and N. M.; *Hotchkiss* v. *Gage*, 26 Barb. 142; *Seixas* v. *Wood*, 2 Caines' Cas. 48.) But if all defenses claimed by respondents were properly

pleaded and amply proven they can not be deemed to affect the rights of appellants herein.

First, they took the note from Wm. Connell, and he was an innocent holder. The appellants became entitled to all his rights, and are not subject to any equities between the original parties to the note. (*Mornyer v. Cooper*, 35 Iowa, 258; *Peabody* v. *Rees*, 18 Id. 571; Story on Prom. N., sec. 119; *Riley* v. *Schawcker*, 50 Ind. 592.)

Respondents can not take advantage of any defenses unless they can prove that the appellants knew fully and completely all the defenses and equities that existed between Everson and Leathers. Mere suspicion that there was fraud or defects is not sufficient, nor is knowledge sufficient to put one upon inquiry. Actual knowledge must be proven, and the total burden of proof rests upon respondents. (*Hotchkiss* v. *Nat. Bank*, 21 Wall. 359; *Magu* v. *Badger*, 34 N. Y. 247; *Riley* v. *Schawcker*, 50 Ind. 592; *Sacket et al.* v. *Kellar*, 22 Ohio St. 554.)

*Catlin, Killin & Nicholas and E. C. Bronaugh*, for respondents:

The fact that this note was offered for one thousand five hundred dollars, when it was perfectly good, was enough to put the parties upon inquiry. The supreme court of Illinois, in *Taylor* v. *Achison*, 54 Ill. 196, held that the fact that the note was for a patent right which was being sold by strangers going through the country on that business was enough to put a purchaser on inquiry.

This court, in *Carter & Mason* v. *Portland*, 4 Or. 339, 350, in an ably argued case and well considered opinion, said: "We think that notice should, with rare exceptions, be implied where a party is shown to have such knowledge as would superinduce further inquiry in an honest, conscientious man." "It is a well settled principle that to constitute notice it is not necessary that it should be in the shape of a distinct and formal communication." (*Bohlman* v. *Coffin*, 4 Or. 318.)

The sale of a patent right for the manufacture of an article which is known to the vendor to be useless and

worthless renders the contract void for want of considera-
tion. And while it has been held that if a bill of sale be
given and accepted which contains no clause or covenant of
warranty as to usefulness, oral representations of the
vendor in that particular, made prior to or contempora-
neously with the writing, cannot ordinarily be given in evi-
dence, because such proof tends to vary or enlarge the
written contract, yet where the element of fraud or deceit
enters into the making of the representations, as when the
vendor knew at the time of making them that they were
false, and that the article manufactured by the process was
worthless and useless, and this is alleged in the pleadings
and established by the proof, the contract will be avoided
both at law and in equity. (*Dickinson* v. *Hall*, 14 Pick.
217, 220; *Jolliffe* v. *Collins*, 21 Mo. 343; 1 Parsons on Con.
436, 437; *Rowe* v. *Blanchard*, 18 Wis. 441; *Lester* v. *Palmer*,
4 Allen, 145; *Taylor* v. *Achison*, 54 Ill. 196.)

To prove a conspiracy to defraud Everson, he may show
conspiracy to defraud others about the same time. (2 Hil-
liard's Torts, 309.) The manner in which the appellants set
up their acquisition of this note in the complaint casts a
suspicion upon their title. After showing the making of
the note, they say " that subsequently, to wit: on the twenty-
fifth day of October, 1876, said L. L. Leathers, for a valu-
able consideration to him in hand paid, indorsed said note
and passed the same to these plaintiffs."

If the note was not taken from Leathers merely for a
cover and for the purpose of collection and division by
halves, why not say that they bought the note, or that
Leathers sold and delivered it to them? Why not fix the
date?

By the Court, Kelly, C. J.:

This was a suit to foreclose a mortgage given by respond-
ents, W. R. and Margaret Everson, to secure the payment
of a note dated October 9, 1876, made by W. R. Everson
to L. L. Leathers, for three thousand dollars, and made
payable to L. L. Leathers, or bearer, one year after date,
with interest at the rate of ten per centum per annum.

The complaint is in the usual form in foreclosure cases, and, among other things, it is averred that before the note became due the said Leathers, for a valuable consideration to him paid, indorsed the note and passed it to the appellants, who were then the owners and holders thereof.

Respondents, W. R. and Margaret Everson, in their answer, allege that there was no valuable consideration received by W. R. Everson for making said note; that at the time it was made Leathers represented to him that he was the owner of a patent process for manufacturing artificial stone, and that by a recipe given in and with said patent, durable and valuable building stone could be manufactured; that he (Everson) believed said representations, and said Leathers assigned his interest in said patent for Missouri and West Virginia, which assignment was the only consideration for making said note. Respondents then allege that the patent was entirely worthless, and that the process by said recipe would not make building or any other kind of stone of any value whatever; that the compound made by the recipe is brittle and soft, and utterly worthless; that Leathers, when he received the note and made the assignment, knew all this, and that he falsely, fraudulently and deceitfully, and for the purpose of cheating said Everson, represented to him that the patent was valuable and would produce valuable building stone.

The answer also alleges that the appellants, at the time they took said note from Leathers, knew that it was for no other consideration than the assignment of the said patent right; that they knew at the time that it was utterly valueless and that it would not make stone of any value; that they knew that Leathers had falsely represented to said Everson that the patent was valuable, and that he had fraudulently procured him to make the note, and that there was no valuable consideration therefor.

The appellants, in their replication, denied these allegations in the answer, and alleged that before maturity thereof they purchased said note, paying therefor one thousand five hundred dollars; that before purchasing the same they inquired of Everson as to the validity of said note, and he rep-

resented to them that the note was genuine, and relying upon such representations they purchased it, with the full knowledge and approval of Everson. After the issues were made the court appointed a referee to take and report the testimony, and when the case was called for trial, on motion of respondent's counsel, the court submitted the following questions to a jury:

1. Was there a *bona fide* and valuable consideration for the note sued on in the case ?

2. Did the payee named in said note procure the payor thereof to execute the same by fraud or deceit? If yea,

3. Did the plaintiffs, or any of them, have notice that the note had been so obtained, or was without a *bona fide* or valuable consideration before or at the time it was transferred to them ?

And it was ordered that a jury be formed to inquire of the same. A jury having been impaneled and sworn, and having heard the evidence adduced, the arguments of counsel and charge of the court, returned the following verdict: "To the first question the jury say that they find and make answer that there was no valuable consideration for the note sued on in this case. To the second question the jury say they find and make answer there was fraud and deceit in procuring the note. To the third question the jury say and find and make answer that the plaintiffs had notice that said note was obtained by fraud and deceit, and was without a *bona fide* and valuable consideration before or at the time it was transferred to them." The court also submitted the following question to the jury: "Did William Connell hold and own the note sued on in this suit before it came to the ownership and possession of the plaintiffs?" To this question the jury answered "No."

In the case of *Swegle* v. *Wells*, decided at the present term of this court, we had occasion to consider under what circumstances it is proper to submit questions of fact arising in a suit in equity to the determination of a jury. It was there held that as section 392, page 192 of the code, did not provide in what cases it became necessary or proper to inquire of a fact by the verdict of a jury, courts of equity

must be governed in this respect by the general equity practice; and that when the facts in a case were strongly controverted and the evidence nearly equally balanced, it was proper to submit these controverted facts for their determination.   This court further held that where a verdict has been taken in such cases in the court below it comes up with the transcript on appeal and may be read in evidence, and while not conclusive upon the court should not be disregarded unless clearly against the evidence."

The decision in that case must govern us in the determination of this.   Whether artificial stone fit for building or other purposes could or could not be made by the process set forth in the Leathers patent was a fact strongly controverted in the evidence, and we think the weight of testimony decidedly is that it could not.   If stone of a good quality could be made by this patented process as cheaply as represented, it is somewhat singular that no one of the many who, as it appears from the evidence, became purchasers of the patent right, has ever considered it worth while to manufacture the stone, or has ever deemed his investment in the Leathers patent to be of the least value.   The jury necessarily came to this conclusion when they found that there was no valuable consideration given for the note of respondent.

The second finding of the jury that there was fraud and deceit on the part of Leathers in procuring the note from Everson is in accordance with the evidence in the case.   As the patented process was worthless this fact must have been known to Leathers, and it follows, as a matter of course, that he perpetrated a fraud in obtaining the note in question for the transfer of a thing that was of no value whatever.

The third finding of the jury is that the plaintiffs had notice before they purchased the note that it was obtained through fraud and deceit on the part of Leathers, and that there was no valuable consideration given by him for it. This averment in the answer was the most strongly controverted of any in the case.   The testimony upon it is voluminous; some of it is irrelevant, and much of it bears but remotely upon the question at issue, and were it left to the

court in the first instance to determine on which side was the preponderance of testimony upon this point, it would be a matter of some difficulty to reach a correct conclusion.

As this point was strongly controverted, the evidence conflicting and nearly evenly balanced, it was, as stated in the case of *Swegle* v. *Wells,* a proper matter to be submitted by the court to a jury to determine the disputed facts, and their verdict should not be disregarded by the court unless it was clearly against the weight of the evidence. We regard their finding as conclusive upon the court. These facts having been found by the jury, the conclusions of law arising upon them are easily determined. It is undoubtedly well settled that a *bona fide* holder of a negotiable note for a valuable consideration, without notice of facts which would impeach its validity between former parties, if he takes it under an indorsement made before the note becomes due, holds the title unaffected by these facts, and he may recover thereon, although as between the antecedent parties the transaction may be without any legal validity.

It is equally well settled that where a negotiable note has been obtained from the maker through fraud, or without any consideration, and the payer has transferred it by indorsement before becoming due, to a holder who had notice before taking it that the note was procured through fraud or without any consideration, such holder will take it subject to all the equities and all the defenses which would exist between the original parties to the note. It is insisted, however, by appellants, that Everson is estopped from making any defense to the payment of the note, because Thomas Connell, one of the appellants, before purchasing it, asked him whether he had any objection to their buying the note from Leathers, when respondent replied that he had not—that he would rather that appellants should have it than Leathers.

This would be a good defense if appellants were not aware that the note had been obtained from the maker by fraud and without consideration; and at the same time the respondent, when he made this statement, was fully informed of these defects in regard to it. But the jury in

their verdict say that the appellants had notice that the note was obtained by fraud and deceit and without consideration before they purchased it, and therefore this defense can not be allowed. This was the exact point decided by the supreme court of Ohio in *Sackett* v. *Kellar*, 22 Ohio St. 554. In that case the court declared that the holder of a negotiable promissory note, purchased before maturity and for value, but with notice that it had been obtained from the maker by fraud and without consideration, can not by way of estoppel prevent the maker from setting up such defenses as against him by showing that the maker, before the purchase, had informed him that the note was all right and would be paid at maturity if it appear that at the time such declarations were made the maker was ignorant of such fraud and want of consideration, and that the holder at the time believed him ignorant thereof, unless he also show that he informed the maker of the facts which had previously come to his knowledge affecting the validity of the note.

This case in Ohio was similar in all respects to the one under consideration, and we think the principles there held were correct and should be adopted here. It is further insisted by the appellants that the defense interposed by the respondents ought not to be allowed, because they took the note from William Connell, who first purchased it from Leathers, and who was an innocent holder, having bought it without any notice of the equities existing between the original parties. It is a sufficient answer to say that this defense is not made in the pleadings of the parties. In the complaint it is alleged that for a valuable consideration to him paid, Leathers indorsed and transferred the note to the appellants, and the answer admits that they took it from Leathers.

If the complaint had been amended, as was done in the case of *Mornyer* v. *Cooper*, 35 Iowa, 258, cited by counsel in support of the position, then evidence of the fact that William Connell was a purchaser without notice of any defects in the note would have been proper. As it was, that evidence was irrelevant to any issue made by the pleadings,

and inadmissible to show that William Connell was an innocent holder of the note. Not being made an issue in the case, the defendant was not expected to be prepared to disprove it. This disposes of all the questions raised on the appeal, and we think the decree of the court below should be affirmed.

Decree affirmed.