Argued at Pendleton May 2, reversed June 21, 1927.

## JACK SARGENT v. PENDLETON AUTO COMPANY.

(257 Pac. 23.)

Records—Law Governing Transfer of Motor Vehicles is Written into Contract (Laws 1925, p. 454).

1. Laws of 1925, page 454, regulating transfer of motor vehicles, is written by its own operation into every contract made pursuant to statute.

Records—Automobile Purchaser, not Receiving Certificate of Title, Acquires Property in Car, and may Contract for Sale (Laws 1925, p. 456, § 3).

2. Purchaser of automobile, though receiving no certificate of title as required by Laws of 1925, page 456, Section 3, acquires property in automobile, and may contract for its future sale and delivery.

Records—Seller of Automobile, Reserving Title, was Required to Deliver Statutory Certificate of Title Only on Consummation of Sale (Laws 1925, p. 456, § 3).

3. Under conditional sale contract of automobile, reserving title in seller and providing for payments in installments, seller was required to give certificate of title provided for under Laws of 1925, page 456, Section 3, only at time sale was consummated by delivery of bill of sale on purchaser's complying with contract.

Records—Purchaser of Automobile Held not Entitled to Rescind Conditional Sale Contract for Seller's Inability to Deliver Certificate of Title (Laws 1925, p. 456, § 3).

4. Purchaser of automobile, under conditional sales contract, reserving title in seller, could not rescind contract on default, though seller was unable to deliver certificate of title required by Laws of 1925, page 456, in view of Section 3, providing for procurement of title, regardless of whether certificate has ever been issued.

Records—Automobile Seller, Agreeing to Give Bill of Sale, may Secure Transfer by Operation of Law Without Indorsing Certificate of Title (Laws 1925, p. 456, § 3).

5.   Under contract for sale of automobile, reserving title in seller who expressly agreed to give bill of sale, seller did not bind itself exclusively to method of transfer embodied in indorsement of certificate of title under Laws of 1925, page 456, Section 3, but was authorized to bring about transfer by operation of law on refusal of Secretary of State to recognize ownership without certificate.

Records—Conditional Sale Contract may be Foreclosed by Automobile Seller Having No Certificate of Title to Pass Title to Purchaser at Sale (Laws of 1925, p. 456, § 3).

6.  Under valid conditional sale contract of automobile, seller, though not able to transfer title by indorsing certificate of title as provided for under Laws of 1925, page 456, Section 3, could resort to foreclosure suit on purchaser's default to enforce contract by procuring judicial sale of property and thereby transfer property by operation of law to purchaser at such sale.

Records—Automobile Purchaser in Default may Purchase Automobile on Foreclosure and Acquire Title Without Certificate, Otherwise Proceeds will be Applied on Balance Due (Laws 1925, p. 456, § 3).

7.  Purchaser of automobile under conditional sales contract foreclosed on default in payment may protect himself by purchasing at judicial sale and receive title to property by operation of law, though seller does not have certificate of title required under Laws of 1925, page 456, Section 3; otherwise proceeds of sale will be applied to balance due on purchase price, remainder going to original purchaser.

---

Contracts, 13 C. J., p. 560, n. 37.
Motor Vehicles, 28 Cyc., p. 44, n. 80. New.
Sales, 35 Cyc., p. 135, n. 16.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

REVERSED.

For appellant there was a brief over the name of *Messrs. Fee & Fee,* with an oral argument by *Mr. J. Alger Fee.*

---

5.  Civil rights and liabilities as affected by failure to comply with regulations as to registration of automobile, see notes in 16 A. L. R. 1108; 35 A. L. R. 62; 38 A. L. R. 1038; 43 A. L. R. 1153.

For respondent there was a brief over the name of *Messrs. Proebstel & Schmidt,* with an oral argument by *Mr. F. W. Schmidt.*

BURNETT, C. J.—The defendant is a licensed dealer in motor vehicles. In substance, the plaintiff alleges that on September 26, 1925, the defendant agreed to sell to him for $275 a Studebaker automobile and "to execute and deliver to plaintiff an affidavit of conveyance and certificate of title to said motor vehicle as provided by Chapter 250, General Laws of Oregon for the year 1925 * * and the plaintiff agreed to purchase the said motor vehicle and to pay therefor the sum of $275." He claims to have paid by installments upon the purchase price $160; that before bringing the action he demanded that the defendant execute and deliver to him the affidavit of conveyance and certificate of title; that he tendered the balance of the purchase price but that the defendant neglected and refused to execute the affidavit and assign the certificate.

A general demurrer to the complaint was overruled and the defendant set up a cross-bill in equity, seeking to foreclose a conditional sales contract, which is attached to the cross-bill as an exhibit. In substance, it was recited by that instrument that the plaintiff has paid $50 on the signing of the contract and is to pay the balance in installments of $27.50 between November 1, 1925, and June 1, 1926. He acknowledges receipt of the property and agrees not to sell or encumber it or remove it out of Umatilla County without the written consent of the vendor. He is to keep it insured and shall pay reasonable attorney's fees and expenses if the company finds it

necessary to recover the property. He is also to pay for any loss or damage occurring to the car and to pay for repairs as part of the purchase price. It provides for foreclosure in case of default on the part of the purchaser. Paragraphs 8 and 9 of the contract read thus:

"8. The title to the said property shall remain in the first party until all of the said payments are made and all of the conditions herein contained fully complied with. Upon the full performance of all of the said conditions and promises by the second party, the first party, or assigns, will execute to the second party a bill of sale to the said property.

"9. Time is expressly made of the essence of this contract."

The making and delivery of the contract are not denied. The Circuit Court decreed that the plaintiff surrender to the defendant the car in question and recover from the latter the sum of $160. No allowance was made for the five months' use of the property by the plaintiff between the execution of the contract and the commencement of the action. The defendant appealed.

1. The law, as it stood at the time of this transaction, is written in Chapter 250, General Laws of Oregon for 1925. It goes without saying that the law governing private transactions is written by its own operation into every contract made pursuant to the statute. The case must turn on the construction of the act as applied to the facts in the case.

It appears that one Shafer was the original owner of the car in question. He traded it in to the defendant at $250 on a contract for the purchase by him of a Chrysler car to be thereafter delivered for which

he was to pay a balance of $1,425 in cash on delivery of the car. Called upon by the defendant for an assignment of his certificate of title to the Studebaker, he promised to deliver it in a few days but it transpired that he had no certificate of title. Meanwhile, he had produced the plaintiff here as a purchaser for the car now in suit and, while the matter was in that situation, the plaintiff and the defendant made the contract for the future sale of the car to the plaintiff. Sargent made four payments after the initial payment of $50 but made none afterwards. After keeping the car for some time, although he knew that the defendant could not transfer a certificate because it had received none from Shafer, and that the latter refused to transfer the certificate, he offered to return the car and demanded the money he had already paid, which was refused. He then instituted this action. The defendant retorted with its bill to foreclose the contract.

At the outset we have a car for which no certificate of title had been issued. Section 3 of the act in question reads thus in part:

"In the event of the sale or other transfer in this state after July 1, 1925, of the ownership of a motor vehicle for which a certificate of title has been issued as aforesaid, the holder of such certificate shall indorse on the back of the same an assignment thereof * * and deliver the same to the purchaser or transferee, at the time of the delivery to him of such motor vehicle."

A licensed dealer on selling or otherwise disposing of such a motor vehicle is required by the act to execute and deliver to the purchaser thereof an affidavit of conveyance or assignment to which shall be

attached the assigned certificate of title received by such dealer. Thereupon, the purchaser of the motor vehicle shall apply for and receive from the Secretary of State a certificate of title. It appears from the evidence that the defendant did deliver the proper affidavit but was unable to annex thereto the certificate mentioned in the act for the very good reason that it had received none. On this ground application for a certificate was rejected by the Secretary of State.

The statute makes a certificate regularly issued only *prima facie* evidence of the ownership or lien upon the car. One would necessarily infer that if the certificate was only *prima facie* evidence of the ownership of the vehicle, there could be other evidence of the title equally potent. As Mr. Justice BROWN said in *Bridewell* v. *Henderson,* 99 Or. 506, 511 (195 Pac. 575):

" * * The vehicle was not cast out from the protection of the law by reason of the plaintiffs' failure to observe the statute. The car was property when it was sold; property when the action was instituted; it is property now. Although plaintiffs' title became defective, they came into possession of the car by lawful means. In acquiring its possession, they committed no act of omission or commission that suggests crime or wrong."

2-4. There is no question but that the defendant derived from Shafer property in the car. No certificate had been issued for it at that time but, being property, the parties had a right to contract for its future sale and delivery or in any other way not forbidden by law. Whatever property there was in it was retained, by the express terms of the contract, in the defendant. Only when the plaintiff had com-

plied with the terms of the contract was the defendant required to do any act and that was merely to give the plaintiff a bill of sale for the property, and, although by the terms of the statute a certificate of title was requisite, it was not due until the time came to consummate the sale by the delivery of the bill. The offer of the plaintiff to return the car was not made in performance of the contract but as an attempt to rescind. He was not in position to rescind because he was himself in default. It being the object of the transaction to transfer the title of this property, the defendant has a right to avail itself of the benefit of the following proviso found at the end of Section 3 of the act:

" * * provided, when the ownership of any motor vehicle shall pass, by operation of law, the person owning such motor vehicle may, upon furnishing satisfactory proof to the secretary of state of such ownership, procure a title to said motor vehicle regardless of whether a certificate of title has ever been issued."

5. Thwarted in its purpose to transfer the title by the Secretary of State's refusal to recognize its affidavit of ownership without a certificate attached, the defendant by its suit to foreclose is endeavoring, as it has a right to do, to bring about a transfer by operation of law. The defendant, by its contract, did not bind itself exclusively to the method of transfer embodied in the indorsement of the certificate. All it expressly agreed to do was to give a bill of sale. Of course, the statute is a part of the contract as much as if written into the instrument itself, but the defendant is entitled to the benefit of all the statute.

Normally and ordinarily, the transfer would be accomplished by an assignment of the certificate. The defendant did everything it could to comply with that condition. It furnished the affidavit but could not annex thereto a certificate because, without its fault, none had been issued. The plaintiff was aware of the situation and, at least in equity, he will not be permitted to treat the defendant as if he had it between himself and Shafer, as between upper and nether millstones, if the statute does provide a means by which the defendant may otherwise lawfully bring about a transfer of the title.

6, 7. Justly the plaintiff owes to the defendant the balance of the contract price on this executory contract for the future sale and delivery of the property. Such a contract is an attribute of property of any kind. It was a legitimate contract. The defendant has a right to resort to his foreclosure suit to enforce that contract by procuring a judicial sale of the property. Such a sale will by operation of law transfer the property from whoever owns it, plaintiff or defendant, or both, to the purchaser of the car. If the plaintiff would protect himself he has a right as a purchaser at such a sale to bid and if he is the highest bidder he will receive the title to the property; otherwise, the proceeds of the sale will be applied to the balance due on the purchase price and the remainder will go to the plaintiff. The title to the car by operation of law will go to the purchaser.

The decree of the Circuit Court was erroneous and is reversed. One will be here entered foreclosing the contract according to the foregoing conclusion.

REVERSED AND DECREE ENTERED.