Argued May 5; affirmed May 27, 1947

# MOGUL TRANSPORTATION CO. *v.* LARISON
## (181 P. (2d) 139)

*S. H. Burleigh,* of La Grande (Dixon & Burleigh and R. D. H. Swindley, of La Grande, on brief) for appellants.

*Colon R. Eberhard,* of La Grande (Cochran & Eberhard, of La Grande, on brief) for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, HAY and WINSLOW, Justices.

HAY, J.

Plaintiff, a corporation, brought this action in claim and delivery against G. L. and J. S. Larison, doing business as Paul Bunyan Co., and John Tocco, doing business as Tocco Truck Lines and as Superior Motor Freight, for the recovery of possession of a motor truck and for damages.

The complaint is in the usual form. The Larisons answered by general denial, and, affirmatively, that they operate a repair and machine shop; that defendant Tocco left the truck in their shop for the purpose of having certain work done thereon; that someone claiming to represent plaintiff demanded possession of the truck; that Tocco refused to permit Larisons to surrender it to anyone but himself; that Larisons claim neither ownership nor right of possession, are

indifferent as between the respective claimants, and are ready to surrender the truck to whoever is legally entitled thereto.

Tocco's answer was a general denial (with certain formal admissions). Affirmatively, seeking equitable relief, he alleged that, on or about June 25, 1945, he offered to buy and plaintiff agreed to sell the truck in question, for the amount of the OPA ceiling price thereon less expense of necessary repairs; that at that time neither party knew the ceiling price; that, relying upon such agreement, he caused repairs to be made upon the truck and new parts to be installed thereon, at an expense of approximately $1,000; that, about July 10, 1945, he learned from and was informed by "the officers and agents of the OPA" that the ceiling price upon said truck under OPA rules and regulations was $1,500; that he offered to pay plaintiff such sum less the expense of repairing the truck; that plaintiff refused to accept such offer, and suggested to Tocco that he pay "more than the ceiling price" and conceal from the OPA the fact of such overpayment by pretending that plaintiff had sold him other property to make up the difference between the ceiling price and the amount that plaintiff demanded for the truck; that Tocco refused to pay more than the ceiling price "or to be a party to the illegal acts and conduct suggested by plaintiff"; that he had made commitments and business arrangements based upon possession and use of this truck; that, under present conditions, it is impossible to purchase trucks upon the open market, and that loss of this truck will cause him irreparable injury; that, in any event, if he should be required to surrender possession to plaintiff, he is entitled to an accounting and compensation in respect of the "repairs, parts and betterments" which he has placed upon the truck. He

tendered into court the sum of $725, which, he alleged, represented the ceiling price upon the truck less expense of repairs, and prayed for a decree of specific performance of the alleged contract of sale.

Plaintiff, replying, alleged affirmatively that in April, 1945, Tocco offered to buy and plaintiff agreed to sell the truck "as is, without tires, without painting and without gas tank", for the sum of $4,000, on terms of cash before taking possession; that, about May 6 or 7, 1945, through misrepresentation and fraud, he secured possession of the truck, "and has never offered to return or pay for the same except when he made tender into court for $725.00."

The evidence is about as follows: In the latter part of April, 1945, at Echo, Oregon, Mr. W. G. Platts, president of plaintiff corporation, and the defendant John Tocco conferred with respect to purchase of the truck by Tocco. Tocco looked the truck over. Platts testified that Tocco offered $4,000 cash for it "as is"; that Platts took time to consider the offer, and later, about May 5 or 6th, accepted it. Without Platts' permission, Tocco took possession of the truck. Tocco informed Platts that a Mr. Parker in Tacoma was financing his equipment for him, and that he (Tocco) would go with Platts to Tacoma in a few days and get the money from Parker. He failed to do so. About July 4, 1945, Platts had a conversation by telephone with Parker, who said that he would not finance Tocco for the truck. Tocco told Platts that he "couldn't run the truck through his books", and requested Platts to make up a bill "showing the truck at less money, and parts, and so on" that he had furnished. Platts did so, but told Tocco that plaintiff's books would show that the truck was sold for $4,000. Failing to receive payment, Platts told Tocco, at Walla Walla, that he

intended to repossess the truck. Tocco told him that it was at La Grande. Platts went to La Grande, and learned that the truck had been placed in the Larisons' garage. He exhibited to Mr. G. L. Larison plaintiff's certificate of title, and demanded possession of the truck. Mr. Larison said that he would not release the truck until he had talked to his attorney. This was on a Sunday. The next day, plaintiff instituted this action.

Tocco testified that he offered to purchase the truck at the OPA ceiling price, whatever it might be. Platts accepted the offer, and he left it to Platts to make the necessary arrangements to comply with OPA regulations. Platts agreed that, in the meantime, Tocco might take possession of the truck and have it overhauled and repaired. He took possession accordingly. Platts called him by telephone and informed him that the OPA ceiling price was around $1,500. Platts told him: "I have to have more than that. * * * Why can't we arrange to sell parts to you and make up the difference?" Tocco said that such a transaction would be illegal, and refused to become a party to it. Platts sent him a number of bills, one charging the truck to him at a price of $1,500, and the others covering parts, at various prices, the aggregate of the bills being $4,000. (The bills are in evidence.) Tocco's mechanics overhauled and repaired the truck, replacing certain parts and adding others. Parker would not finance the deal unless Tocco "okehed" it. Parker knew that Platts wanted four thousand, and that was too much for the truck. Parker "was naturally interested in not paying over the OPA ceiling, and having all these papers for it so they could be sent to the bank". At Walla Walla, on the day before this action was commenced, Platts, for the first time, exhibited to

Tocco the certificate of title for the truck. Tocco thereupon offered to pay him the OPA ceiling price of $1,500, less cost of tires, but Platts refused the offer. Tocco then offered to redeliver the truck to plaintiff at Echo, Oregon, if Platts would permit him to remove certain parts which he had added. Platts agreed to this. Tocco, however, suspecting that Platts did not intend to abide by such agreement, sent one of his employees by chartered airplane from Walla Walla to La Grande, with instructions to place the truck in the Larisons' garage to be held there until the dispute was settled. This was done.

Mr. G. L. Larison testified that his firm operates a truck repair plant at La Grande. On a Sunday in July, 1945, a truck was brought to the plant "by Mr. Tocco, or his company", and certain work was ordered to be done upon it. Mr. Platts called at the plant next day, and demanded the truck. The work had not been done, and the Larisons had no claim against the truck. "We were just, what you might say, stakeholders, or in the middle, and were at all times ready to deliver the truck to the proper owner. * * * Q. You had no chance to make a decision? A. It was pretty early in the day. I don't think we could have done anything about it anyway, because where disputes arise about a piece of property, if we turned it over to the wrong party they could have sued us, and we were rather in the middle." He so informed Mr. Platts. He could not recall having been shown the certificate of title. Suit was brought against his firm on that same day.

The court heard the case as a suit in equity, but impaneled a jury to make advisory findings upon certain issues of fact. Section 9-201, O. C. L. A. The jury, in response to specific interrogatories, found: (1) that Tocco offered to buy the truck "as is", without

tires or gas tank, and unpainted, for $4,000, on terms of cash before taking possession; (2) that, through wrongful detention of the truck, plaintiff was damaged in the sum of $4,500; (3) that plaintiff had the right to the use of the truck from the time of its detention until the time of the trial; (4) that plaintiff "could have used" the truck during such period of detention; and (6) that the reasonable value of the use of the truck was $15 per day. The court made no special findings, but, upon the verdict of the jury and upon the evidence, found generally for plaintiff and against all of the defendants, and decreed that plaintiff should have possession of the truck "in substantially as good condition as the same was (in) when withheld by the defendants", or, in case delivery thereof could not be had, that it recover the value thereof, to wit: $4,500, from the defendants and each of them; and that plaintiff recover, as against the defendants and each of them, damages in the sum of $2,500, with costs of suit. The defendants appeal.

■ The court of equity had jurisdiction by virtue of the equitable defenses interposed separately by Tocco and the Larisons. The whole cause was submitted by all parties to the equitable forum. None of the parties demanded a jury trial. Tocco's affirmative answer, in the nature of a cross bill, concluded with a prayer for general relief in equity. The question of the court's jurisdiction to grant complete relief, therefore, does not arise. *Oldenburg v. Claggett,* 142 Or. 238, 20 P. (2d) 234. Cf. *Cody Lumber Co. v. Coach,* 76 Or. 106, 146 P. 973; *Bell v. Spain,* 110 Or. 114, 129, 222 P. 322.

■ Assuming that a price was agreed upon, there is no dispute between the parties upon the fact that the transaction was to be a cash sale. In such a sale, payment and delivery are concurrent acts. Title to

the property does not pass until payment, and, if the buyer has taken possession without paying the price, the seller, unless he has waived concurrent payment, may reclaim the property if, in the interim, rights of innocent third persons have not intervened. *Johnson v. Iankovetz*, 57 Or. 24, 102 P. 799, 110 P. 398, 29 L. R. A. (N. S.) 709; *Keegan v. Lenzie*, 171 Or. 194, 135 P. (2d) 717.

Mr. Tocco contends that the OPA ceiling price was the only lawful price. Platts testified that the agreed price was $4,000. Tocco, in his answer, alleged that he learned from and was informed by "the officers and agents of the OPA" that the ceiling price was $1,500. He made no proof of such allegation. He testified that Platts told him what the OPA price was, but Platts denied having done so. There was no evidence of what the OPA ceiling price actually was.

■ Maximum prices established by the Federal Price Administrator are published in the Federal Register, the contents of which are required by the federal statute to be judicially noticed by the courts. 44 U. S. C. A., section 307. Cf. section 2-502 (3), O. C. L. A. *Weatherford v. Coffin*, Tex. Civ. App., 187 S. W. (2d) 406. The truck involved herein would apparently be classified under OPA regulations as a used commercial motor vehicle. Its original engine had been removed, and a diesel engine substituted. Structural and other changes had been effected. There is a complicated formula for arriving at the maximum sale price permissible for such a vehicle. (See Federal Register, vol. 10, No. 223, p. 13868, Nov. 14, 1945.) A court could not reasonably be expected to know such a formula unless its attention were directed thereto. *Christy v. Wabash R. Co.*, 195 Mo. App. 232, 191 S. W. 241. In the case at bar, the court was not requested to take judicial notice. It

was not obliged to do so *sua sponte.* 5 Wigmore, Evid., 3 ed., section 2568. See Anno., 113 A. L. R., at p. 259.

■■ The jury's special verdict found that the contract price was $4,000. The verdict was adopted by the trial court. The court and jury saw and heard the witnesses. While the hearing before us is *de novo* and the jury's verdict is not conclusive upon us, nevertheless we cannot disregard such verdict or hold the facts to be to the contrary, unless (which is not the fact) it is "clearly against the evidence". *De Lashmutt v. Everson,* 7 Or. 212, 219; *Swegle v. Wells,* 7 Or. 222, 226; *Wadsworth v. Brigham* (opinion on rehearing) 125 Or. 458, 471, 484, 266 P. 875. Recollection of the salient facts must have been clearly present in the minds of the witnesses, but the testimony is so grossly contradictory that the decision inevitably resolved itself into a weighing of their respective veracity. We accept the jury's verdict.

Mr. Tocco suggests that, in any event, it is inequitable to require him to return the truck with his own parts and equipment upon it, while at the same time awarding damages against him for its detention. As to this, the court's decree simply and correctly requires him to return the truck in substantially as good condition as it was in "when withheld" by him. We construe the quoted words to mean "when first withheld".

■ On cross-examination of plaintiff's witness Platts, counsel for Mr. Tocco sought to develop that Platts knew, when, on plaintiff's behalf, he entered into the contract of sale, that, being based upon a price exceeding the maximum price permitted under the Emergency Price Control Act (56 Stat. 28, c. 26, Title I, sec. 4; 50 U. S. C. A. App., sec. 904), it was illegal. Counsel

for plaintiff objected to such cross-examination, on the ground that it was an attempt by a defendant, on cross-examination of plaintiff's witness, to establish an affirmative part of defendant's own case. If plaintiff's action had been based upon the contract of sale, the cross-examination would no doubt have been proper. Section 4-708, O. C. L. A.; *Ah Doon v. Smith,* 25 Or. 89, 34 P. 1093. The action, however, was not based upon the contract, and it was within the court's discretion whether or not to permit the cross-examination. *Krebs Hop Co. v. Livesley,* 55 Or. 227, 234, 104 P. 3; 70 C. J., Witnesses, sections 827, 829.

■ It is argued that, when it appeared to the court, from the testimony, that plaintiff's right to recover was predicated upon an illegal contract, it should have excluded all evidence in support thereof. *Smith v. McGowan,* 131 Or. 522, 533, 284 P. 189; 12 Am. Jur., Contracts, section 160. Counsel's theory is that the parties were in *pari delicto,* that the contract was already executed, and that, under those circumstances, plaintiff ought not to be permitted to reclaim its property. *Bernard v. Taylor,* 23 Or. 416, 422, 31 P. 968, 18 L. R. A. 859; 17 C. J. S., Contracts, section 272.

As we have said, plaintiff was not seeking to recover upon the contract. We have adopted the jury's view that the contract price was $4,000 rather than the OPA ceiling price. Plaintiff's case was founded rather upon a repudiation of the contract than upon an affirmance thereof. Tocco took possession of the truck without plaintiff's permission and without paying the purchase price. Delivery and payment being acts which the contract required to be concurrently performed, the nonperformance of both left the contract entirely unexecuted. Assuming that the contract

was illegal, plaintiff, as it had a right to do, availed itself of a *locus poenitentiae,* and repudiated it before its illegal purpose was consummated. The law permits it, under those circumstances, to recover back its property. *Bernard v. Taylor,* supra; *Leadbetter v. Hawley,* 59 Or. 422, 424, 425, 117 P. 289, 505; *Booth-Kelly Lbr. Co. v. Oregon & California R. Co.,* 98 Or. 21, 42, 193 P. 463; *Boyd v. Boyd,* 112 Or. 658, 662, 230 P. 541; 17 C. J. S., Contracts, section 275.

Error is assigned upon the refusal of the court to decree in Tocco's favor, and counsel support this assignment by an elaborate and ingenious argument upon the weight of the evidence and the credibility of the respective witnesses, which has had our careful consideration. It must be conceded that the evidence tended to indicate that Mr. Platts attempted, by a shoddy, bookkeeping artifice, to evade the limitations upon sales sought to be imposed by the Emergency Price Control Act. His attempts to explain away that evidence were somewhat unconvincing. The jury may have interpreted the evidence, however, as showing that Platts' moral turpitude in this connection (if it was such) was counterbalanced by mental agility on the part of Tocco in evading payment.

Upon the whole case, we are of the opinion that the jury's verdict and the trial court's decision, so far as Mr. Tocco's liability is concerned, were supported by the weight of the evidence.

■ Mr. Tocco's purpose, in placing the truck in the Larisons' garage and ordering some work to be done upon it, was twofold: (1) to impound the truck until his dispute with plaintiff had been settled, and (2) to protect his interests, against the contingency that he should be obliged to surrender the truck to plaintiff,

by removing therefrom the parts which he had affixed thereto. There is no evidence whatever that the Larisons had knowledge of these matters, or that they were parties to any conspiracy or scheme to withhold from plaintiff its property. It is no doubt true that, either on the day on which the truck was received by them, or next morning, Mr. Platts, in demanding possession of the truck, exhibited to the Larisons plaintiff's certificate of title, but it does not follow that they were obliged to surrender the truck immediately. The certificate of title was evidence of ownership. Section 115-114, O. C. L. A., as amended by chapters 26 and 187, Oregon Laws, 1945. It is, however, prima facie evidence only. *Fagg v. Mass. B. & I. Co.,* 142 Or. 358, 364, 19 P. (2d) 413; *Sargent v. Pendleton Auto Co.,* 121 Or. 677, 682, 257 P. 23. From Tocco's possession of the truck, there arose a disputable presumption that he owned it. Section 2-407 (11), O. C. L. A.; *Hayes v. Ogle,* 143 Or. 1, 8, 12, 21 P. (2d) 223. A presumption, by the language of the statute (section 2-401, O. C. L. A.) is a species of indirect evidence, and this court has held that, while not evidence in the strict sense of the term, it "stands in lieu of evidence" until overcome by evidence to the contrary. *Wyckoff v. Mutual Life Ins. Co.,* 173 Or. 592, 147 P. (2d) 227. Plaintiff's demand for possession of the truck placed the Larisons in a quandary. They made no claim to the truck. They did not, in any manner, support Tocco's claim thereto, nor were they joint tortfeasors with him. They explained to Platts their situation as bailees, and asked for time to consult their attorney. Their refusal to surrender the truck immediately upon demand, without having had an opportunity to determine whether or not they ought to do so, was not inconsistent with the rights of the owner, nor was it a conversion. On the contrary,

such qualified refusal was reasonable and justifiable. 6 Am. Jur., Bailments, section 169; Anno. 43 A. L. R., at pp. 172, 173. It would be intolerable if the law were otherwise. As bailees, the Larisons had a right to protect themselves by taking time to make reasonable inquiry as to the real ownership and to determine what steps to take to protect both the bailor and themselves. 6 Am. Jur., Bailments, section 324. They were sued, according to their own evidence, on the very day of the demand, or, according to plaintiff's evidence, on the next day, the day of demand being Sunday. *Gordan v. Briody,* 170 Or. 410, 134 P. (2d) 431, upon which plaintiff relies, presented an entirely different state of facts, and is not in point.

■ It is suggested that the Larisons, by denying, in their answer, plaintiff's ownership of the truck, showed that they were not disinterested stakeholders. The answer, in this connection, merely alleges, in effect, that the Larisons had no knowledge or information sufficient to form a belief as to whether or not plaintiff owned the truck. Such denial cannot be construed either into an assertion by the Larisons contrary to plaintiff's alleged ownership or into an espousal of Tocco's claim. The affirmative answer alleged the existence of the adverse claims to the property in dispute, and that the Larisons claimed no beneficial ownership in the property and were ready and willing to surrender it to the true owner. This, coupled with a general denial, was a sufficient pleading to entitle the Larisons to the equitable remedy of interpleader. *Hubbard v. Crude Oil Marketing & Trading Co.,* Tex. Civ. App., 119 S. W. (2d) 161. Cf. 48 C. J. S., Interpleader, section 29.

Under our statute, the Larisons might have relieved themselves of liability for damages for depriving plaintiff of the use of the truck during the pendency of the

action. The statute (section 1-314, O. C. L. A.) reads as follows:

"In any action for the recovery of specific personal property, if a third person demand of the defendant the same property, the court in its discretion, on motion of the defendant, and notice to such person and the adverse party, may, before answer, make an order discharging the defendant from liability to either party, and substitute such person in his place as defendant. Such order shall not be made but on the condition that the defendant deliver the property or its value to such person as the court may direct, nor unless it appears from the affidavit of the defendant, filed with the clerk by the day he is otherwise required to answer, that such person makes such demand without collusion with the defendant. The affidavit of such third person as to whether he makes such demand of the defendant may be read on the hearing of the motion."

 The Larisons, having failed to take advantage of the statute, might have had the same remedy under the equitable procedure. The statutory remedy of interpleader, it is held, does not oust courts of equity of their jurisdiction in interpleader, but is merely a concurrent and cumulative remedy. 30 Am. Jur., Interpleader, section 17, note 12. Following equitable procedure, the Larisons should have offered, in their affirmative answer, to bring the property into court to abide its decision, and should have protected themselves by securing an order passed pursuant to their offer. As said by the South Carolina court in *Williams v. Walker,* 19 S. C. Eq. (2 Rich.) 291, 46 Am. Dec. 53, 55:

"* * * The complainant, in a bill of interpleader, should not only offer, by his bill, to pay the fund into court, but he should take care to have an

order passed to that effect, if he desires to protect himself from the liability for interest on the fund while it is in his possession. The rule is very explicit and well settled, that on a bill of inter-pleader, the plaintiff 'must bring the money into court, before he takes any step in the cause:' 1 Smith's Ch. Pr. 476. And in Pauli v. Von Melle, 8 Sim. 327, an order for an injunction in an inter-pleading suit was declared to be irregular, 'if it did not make the issuing of the injunction dependent on the payment of the money into court.' "

The equivalent of interest upon a fund in dispute would, in this case, be the reasonable value of the use of the truck. *Lytle v. Payette-Oregon Slope Irr. Dist.,* 175 Or. 276, 290, 152 P. (2d) 934, 156 A. L. R. 894.

It is asserted that the Larisons permitted Tocco to use the truck for a period, while the suit was pending, thus displaying their unneutrality. The only evidence of such permissive use was elicited by counsel for plaintiff on cross-examination of Mr. G. L. Larison. It is as follows:

"Q. Are you in a position to deliver that truck now to anybody that the court decrees is entitled to it? A. I don't believe I can answer that question directly or properly. Some time ago there was a bond put up for $5000 and the truck was released at that time, and the truck was later brought back. Q. You don't know how much use it has had in the meantime, or what kind of treatment it has had? A. No, I don't. Q. Do you know whether this bond was called to the attention of Mr. Platts or his attorney? A. No, I don't. Q. As a matter of fact, you just know that it wasn't, don't you? A. I don't know, Mr. Eberhard, because it was all handled over the 'phone, as far as I am concerned. Q. Your firm has the same attorneys that Mr. Tocco has? A. Yes, Mr. Dixon has been our attorney for years. Q. They have really been handling

the whole matter for you? A. Yes. We were advised early in the proceedings that we were simply stakeholders in the matter, so several times when there has been arguments in the paper about it I called up and was assured we were all right. Q. So lawyers are not the only ones annoyed by these articles in the newspapers? A. No; it was rather unpleasant on our part, because we took the truck in from one party, and could hardly turn it over to another party without evidence that it belonged to him, especially when there was a dispute regarding the ownership of it. Q. Especially when one of the parties had the same attorney you had?

"MR. BURLEIGH: Object as argumentative.

"THE COURT: Sustained."

Counsel for plaintiff failed to pursue the matter further, and we are, therefore, left without evidence of who gave bond to whom, who took the truck, what use was made of it, how long it was used, to what extent, if any, its value was depreciated, and whether or not action on the bond is available to plaintiff. All that appears is that somebody—presumably Tocco— was permitted to use the truck.

No reply appears to have been filed to the new matter in defendants Larison's answer, but, the issues thereby sought to be raised having been contested upon the merits, a reply is deemed to have been waived. *Larsen v. Duke,* 116 Or. 25, 240 P. 227.

The Larisons appear to have acted in good faith and without collusion with Tocco. They and Tocco were represented by the same attorneys, which was unfortunate—there being a conflict of interests—but no proof of collusion. Failure on the part of the Larisons to offer to deliver the truck as the court might direct, and to take a court order protecting them in the premises, had the effect of subjecting them to

liability to damages for depriving plaintiff of the use of the truck. Whether or not they are so liable appears to be an academic question in fact, as the Larisons and Tocco, after giving joint notice of appeal, gave a joint and several undertaking on appeal, not only for costs, but for the satisfaction of the decree and judgment so far as it is affirmed.

The decree is affirmed, with costs.